## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

DORALEH CONTAINER TERMINAL SA,
    Port Autonome International De
    Djibouti, BP 2107, Republic of
    Djibouti,

              Petitioner,

      -against-

REPUBLIC OF DJIBOUTI,
    Port de Djibouti, PO Box 197, Djibouti

              Respondent.

Index No.:_____

## PETITION TO CONFIRM
## ARBITRATION AWARDS

Petitioner Doraleh Container Terminal SA, ("DCT") by and through its undersigned counsel, respectfully submits this Petition to confirm the Third Partial Final Award dated March 29, 2019, as corrected by the Memorandum of Corrections dated May 3, 2019, and the Fourth Partial Final Award dated July 1, 2019 (collectively, the "Awards") rendered in the arbitration proceeding between Petitioner herein DCT and Respondent herein The Republic of Djibouti ("Djibouti"). The Awards against Djibouti should be recognized pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as codified by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208 ("New York Convention"), and a money judgment should be entered in Petitioner's favor against Respondent in the amount of the Awards and for such relief as the Court deems just and proper.

## PARTIES

1.      Petitioner DCT is a joint venture company between Djibouti's port company, Port de Djibouti SA ("PDSA"), and DP World Djibouti FZCO ("DP World") established under the

laws of Djibouti with an address at Port Autonome International De Djibouti, BP 2107, Republic of Djibouti. DCT was created for the purpose of building, developing and operating an international container terminal in Doraleh, Djibouti. As further explained below, DP World holds a minority 33.34% share interest in DCT. However, pursuant to the applicable joint venture agreement and the company's articles of association, DP World has the right to appoint a majority of the members of DCT's board of directors and a determinative vote on various "Reserved Matters," thereby exercising control over the Petitioner.

2.      DCT was a respondent in an arbitration proceeding administered by the London Court of International Arbitration ("LCIA"), LCIA No: 142732, commenced by Djibouti, the Djibouti Ports and Free Zones Authority ("DPFZA") and PDSA, as claimants, against DCT, DP World and Dubai (International) Djibouti FZE ("Dubai International"), as respondents (the "London Arbitration").[1]

3.      Respondent Djibouti is a "foreign state" within the meaning of 28 U.S.C. § 1330.

## JURISDICTION AND VENUE

4.      This Petition seeks confirmation of the Third Partial Final Award, which was rendered in the London Arbitration. The Third Partial Final Award is attached as Exhibit **A** to the accompanying Declaration of Dennis H. Hranitzky in Support of Petition to Confirm Arbitration Awards ("Hranitzky Declaration"). The Memorandum of Corrections issued on May 3, 2019, which corrected certain typographical errors in the Third Partial Final Award is attached as Exhibit **B** to the Hranitzky Declaration. This Petition also seeks confirmation of the Fourth

---

[1]  DCT is also a claimant in LCIA Case No. 183886, between DCT and DP World, as claimants, and Djibouti, as respondent, in which it seeks to uphold its contractual rights by way of declaratory relief and orders for specific performance, and reserves the right in future to seek to recover *inter alia* lost profits, management fees and unpaid dividends. A third arbitration is

Partial Final Award rendered in the London Arbitration and dated July 1, 2019. The Fourth Partial Final Award is attached as Exhibit **C** to the Hranitzky Declaration.

5.    The Court has subject matter jurisdiction over this action pursuant to 9 U.S.C. § 202, which provides, in relevant part: "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention;" and 9 U.S.C. § 203, which provides: "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." The Awards at issue arose out of a commercial legal relationship between DCT and Djibouti under their Concession Agreement, and therefore meet the criteria under 9 U.S.C. §§ 202-203. *Newco Ltd. v. Gov't of Belize*, 156 F. Supp. 3d 79, 80-82 (D.D.C. 2015) (holding arbitration award arising from a concession agreement was based on a commercial legal relationship).

6.    Moreover, the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. § 1605(a)(1) grants federal district courts subject matter jurisdiction over foreign states in cases "in which the foreign state has waived its immunity either explicitly or by implication." Djibouti has waived its immunity from suit under 28 U.S.C. § 1605(a)(1) by agreeing to arbitrate disputes arising under the Concession Agreement pursuant to LCIA Rules. *See* Article 20 of the Concession Agreement, annexed to the Hranitzky Declaration as Exhibit **D**.

7.    In addition, under 28 U.S.C. § 1605(a)(6), Djibouti is not entitled to sovereign immunity because this case falls under the exception for cases brought to confirm arbitration

---

pending in London between DP World and PDSA related to purported termination of the joint

awards that "are or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

8.      The Awards are governed by the New York Convention as this is an action to enforce an arbitral award rendered in the United Kingdom (a New York Convention contracting state). "The New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception [under 28 U.S.C. §1605(a)(6)]." *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 33 (D.D.C. 2016) (internal citations omitted).

9.      This Court has personal jurisdiction over Djibouti pursuant to 28 U.S.C. § 1330(b).  That section provides that this Court has personal jurisdiction over a foreign state in an action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607 and where service has been made under 28 U.S.C. § 1608(a).

10.      Venue in this Court is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4) which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## FACTUAL BACKGROUND

### The Concession Agreement and Underlying Dispute

11.      In the early 2000s, Djibouti, which is a country located in a strategic shipping location in the Red Sea near the Horn of Africa, identified the need to upgrade and develop its antiquated port facility.  In connection therewith, Djibouti granted DP World a concession to construct, develop and manage a new container terminal facility.  The concession was to be held

venture agreement.  These proceedings are not the subject of this Petition.

by the special purpose joint venture company, DCT, which was incorporated by a statute passed by Djibouti's Parliament.

12.     In October 2006, Djibouti and DCT entered into a Concession Agreement pursuant to which DCT was given the exclusive right, for a 30 year period (plus two further 10-year extensions), to develop, construct, manage and operate the container terminal at Doraleh (the "Terminal"). The Concession Agreement also gave DCT complete and unconditional exclusivity over handling of container traffic within the territory of Djibouti. A copy of the Concession Agreement is annexed to Hranitzky Declaration as Exhibit **D**. A copy of the addendum to the Concession Agreement is annexed to Hranitzky Declaration as Exhibit **E.** On December 18, 2006, the Djiboutian Parliament enacted a law ratifying the Concession Agreement. The Concession Agreement entitled Djibouti to annual royalties of the higher of $6 million or 5% of port revenues, and Djibouti and DP World were both entitled to a share of DCT's profits in proportion to their respective shareholdings. Further, on May 22, 2007, PDSA entered into a joint venture agreement with DP World with respect to the governance and management of DCT. DCT was to be owned by PDSA (holding 66.66% of the shares) and DP World (holding 33.34% of the shares). Lastly, DCT entered into a Management Services Agreement, ("MSA"), dated December 6, 2006, pursuant to which DP World was to perform various management services and be paid a management fee.

13.     Article 20 of the Concession Agreement provides for arbitration of any dispute under LCIA Rules if the dispute cannot be amicably settled and that any resulting award shall be "final and binding" and "enforced against the Parties." It further states that "judgement upon the Arbitral Award may be entered in any court having jurisdiction thereof." Section 20.2 provides in relevant part:

20.2.1 Arbitrators

Failing amicable settlement and/or settlement the dispute or differences or claims, as the case may be, shall be finally settled by binding Arbitration under the Rules of Arbitration of the London Centre for International Arbitration by a sole arbitrator appointed in accordance with the said Rules.

20.2.4 Enforcement of Award
Any decision or award resulting from Arbitration shall be final and binding upon the Parties. The Parties hereto, hereby waive, to the extent permitted by law, any rights to appeal or to review of such Award by any court or tribunal. The Parties hereto, agree that the Arbitral Award may be enforced against the Parties to the Arbitration proceeding or their assets, wherever they may be found, and that a judgement upon the Arbitral Award may be entered in any court having jurisdiction thereof.

14.     The Terminal was built in accordance with the Concession Agreement at a cost of $427 million, and was completed on schedule and opened in December 2008. Pursuant to the MSA, DP World managed the day-to-day operations at the Terminal. The Terminal, which is among the most advanced ports in Africa, has been very profitable and also brought a range of indirect benefits to the Djiboutian economy such as increased local employment, infrastructure building, foreign investment and doubling of the country's GDP.

**The Arbitration Proceedings**

15.     In 2014, Djibouti, DPFZA and PDSA commenced the London Arbitration, LCIA No: 142732, against DCT, DP World and Dubai International, claiming, among other things, that the Concession Agreement should be rescinded because it had been procured through bribery and corruption of Mr. Abdourahman Boreh, a successful Djiboutian businessman, and a former close friend and associate of the President of Djibouti, Mr. Ismail Omar Guelleh. Although the Concession Agreement provided for arbitration before a single arbitrator, Djibouti's then counsel proposed and the parties agreed to resolve the dispute before a tribunal of three arbitrators. *See* Amended Request for Arbitration at ¶¶ 22-23, annexed to the Hranitzky Declaration as Exhibit

**F**, ("Claimants have proposed that this dispute be determined by three arbitrators, with each of Claimants, on the one hand, and Respondent DP World on the other, nominating one arbitrator for appointment by the LCIA Court, with the two arbitrators so nominated to agree on the third arbitrator to serve as chair of the Tribunal." "By email dated 31 July 2014, Respondents agreed to this proposal."); *see also* July 31, 2014 email, annexed to the Hranitzky Declaration as Exhibit **G.**

16. An arbitration hearing in accordance with the LCIA rules was conducted in the fall of 2016. On February 20, 2017, the tribunal (comprised of Sir Richard Aikens, Lord Leonard Hoffmann and Peter Leaver QC) issued the first of four awards. In the First Award issued in 2017, the tribunal dismissed in their entirety claims brought by Djibouti to invalidate the Concession Agreement and also determined that Djibouti was obligated to pay the costs and legal fees related to the arbitration. The tribunal issued a Second Partial Final Award dated June 29, 2017 awarding the respondents therein the costs of the arbitration in the amount of £7 million (which were thereafter paid by Djibouti).

17. The First and Second Awards did not address the counterclaims brought by DCT and DP World—related to breach of the failure to pay certain royalties and for breach of the Concession Agreement—because these claims were stayed at the end of the 2016 hearing in order to allow for commercial settlement discussions between the parties. Those claims were instead addressed in the Third and Fourth Awards—the Awards at issue in this Petition. In brief, the substance of these counterclaims was as follows:

    a) *Breach of Exclusivity Counterclaim*: Articles 3.6.2 and 3.6.3 of the Concession Agreement confer on DCT complete and unconditional exclusivity over handling of ship container traffic within the territory of Djibouti. Notwithstanding DCT's

exclusivity rights, in early 2013, Djibouti concluded an agreement with China Merchants Port Holdings Co. Ltd and its affiliates ("China Merchants") to develop, build and operate a new multipurpose port known as the Doraleh Multipurpose Port ("DMP"). In breach of DCT's exclusivity rights, the DMP has container handling capacity for up to 200,000 TEUs (twenty-foot equivalent units, the standard unit of measurement for shipping container volumes). DCT's consent was never sought at any point in time prior to, or during, the construction and development phase of the competing DMP. Accordingly, DCT brought a claim against Djibouti for breach of its exclusivity rights under the Concession Agreement.[2]

b) *Unpaid Royalties Counterclaim*: In accordance with DCT's exclusivity rights under the Concession Agreement, all container ships entering Djibouti were to be serviced at the Terminal. However, certain ships carrying mixed cargo (*i.e.* containers along with other cargo), preferred to dock at the old port in Djibouti City (which was a multipurpose port, capable of handling mixed cargo) (the "Old Port") rather than the Terminal. Djibouti agreed that it would pay a royalty on each container handled at the Old Port, in accordance with its obligations under Articles 7.1.1 and 7.12.(i) of the Concession Agreement. However, the parties failed to agree a reasonable rate of royalty and Djibouti did not make any payment for containers handled at the Old Port from 2010 onwards. Accordingly, DCT brought a claim to recover unpaid royalties.

---

[2] DCT is also pursuing a lawsuit against China Merchants in Hong Kong in respect of the DMP's development.

18.     During 2017 and into 2018, the parties attempted to amicably resolve the above counterclaims, but were ultimately unsuccessful.  On November 9, 2018, an arbitration hearing on the counterclaims took place.  At this stage, although Djibouti had initiated the London Arbitration proceedings, it chose not to appear (and was no longer represented by counsel) despite being notified of the date and time of the hearing.  *See* ¶ 13-17 of the Third Partial Final Award annexed to the Hranitzky Declaration as Exhibit **A,** Hranitzky Declaration at Exhibit **H**. The tribunal proceeded with the hearing.

19.     Meanwhile, in late 2017, Djibouti enacted a law permitting the Djiboutian government to demand the renegotiation of so-called "strategic infrastructure contracts" and to unilaterally terminate them should renegotiation attempts fail.  Beginning in December 2017, the Djiboutian government invoked this law against DCT and DP World demanding that the Concession Agreement, which had only just been held valid and binding in the London Arbitration, to be renegotiated.  To this day, this law has not been applied against any other infrastructure project or contract in Djibouti.  DCT and DP World refused to bow to Djibouti's unlawful demand to renegotiate the terms of the Concession Agreement.  Accordingly, in February 2018, DCT and DP World issued a Notice of Dispute to Djibouti with respect to the Concession Agreement and, shortly thereafter, commenced the second (and separate) arbitration proceeding at the LCIA under the Concession Agreement (LCIA Case No. 183886).

20.     In apparent retaliation, two days later, Djibouti issued an executive decree signed by its President, purporting to terminate the Concession Agreement, and at the same time, took physical control of the Terminal and expelled DP World's personnel from the country.  In July 2018, PDSA also purported to terminate the joint venture agreement with DP World, and that action is the subject of a third separate arbitration proceeding between PDSA and DP World, also

administered by the LCIA (LCIA Case No. 184063). On July 31, 2018, the tribunal in the second arbitration, LCIA Case No. 183886 (Professor Zachary Douglas QC) issued a Partial Final Award finding that the Concession Agreement, which was governed by English law, "remains valid and binding," notwithstanding Djibouti's law and executive decrees purporting to terminate it.

21.     In September 2018, Djibouti applied to the Djibouti Court of First Instance in *ex parte* summary proceedings seeking the appointment of a provisional administrator over the joint venture entity, DCT, on the ground that there were "tensions" between the shareholders of DCT (PDSA and DP World). Later that month, the Djiboutian court appointed Ms. Chantal Tadoral as the provisional administrator of DCT. On November 19, 2018, Ms. Tadoral, purporting to act on behalf of DCT, claimed that she has replaced the "management bodies" of DCT (i.e. its board of directors) and applied for a stay of the proceedings in LCIA No: 142732.

22.     However, on January 3, 2019, having received written submissions from Ms. Tadoral and counsel for DCT, the tribunal rejected the application for a stay and moved forward with its award on the counterclaims. The tribunal found that in circumstances where (i) the arbitration on the counterclaims had proceeded to the stage of a hearing without any protest or challenge by the claimants (*i.e.* Djibouti, DPFZA and PDSA) or Ms. Tadoral; and (ii) no further participation was required from any party and all that remained is for the tribunal to deliver its Award, a stay of the proceedings was unwarranted. *See* Decision with Reasons on Application for a Stay, annexed to the Hranitzky Declaration as Exhibit **I**.

**Third Partial Final Award**

23.     On November 9, 2018, a hearing was held in the London Arbitration to determine the counterclaims. Djibouti did not participate, despite having been given notice of the day and

time of the hearing and being provided an opportunity to make submissions in writing, as well as copies of all correspondence between DCT, DP World and the tribunal. *See* Hranitzky Declaration at Exhibit **H**. Following the hearing, a copy of the transcript of the hearing along with a summary schedule of costs was provided to Djibouti's authorized representative. *Id*. On March 29, 2019, the London tribunal issued its Third Partial Final Award on the counterclaims against Djibouti. *See* Hranitzky Declaration at Exhibit **A**. This award was later corrected by a May 3, 2019 Memorandum of Corrections, fixing typographical errors in the operative section of the Third Partial Final Award to reflect the Tribunal's finding that the unpaid royalties due to DCT amount to $87,947,236 before interest. *See* Hranitzky Declaration at Exhibit **B**. In the Third Partial Final Award (as corrected), the London tribunal granted declarations that Djibouti breached the Concession Agreement, and ordered Djibouti to pay: (i) $87,947,236 million for unpaid royalties, plus compound interest at the rate of 3% per annum; (ii) $385.7 million in damages for the breach of the exclusivity provision of the Concession Agreement, plus simple interest at the rate of 3% per annum, as well as; (iii) legal and professional fees of the respondents, and the costs of the arbitration incurred in connection with the arbitration of the counterclaims in the amount of £576,114.62 (approx. $741,437.46 at the current exchange rate). The Third Partial Final Award thus awarded total damages and legal costs to DCT in the amount of $474,388,673, not including interest.

**Fourth Partial Final Award**

24.     On July 1, 2019, the London Arbitration tribunal issued the Fourth Partial Final Award awarding compound interest to DCT in respect of unpaid royalties of $87,947,236 in the amount of $11,300,000 "up to and including 11 April 2019." The tribunal also declared that Djibouti was required to "pay interest compounded at yearly rests for any further period from 12

April 2019 that elapses until payment of the principal sum of US$87,947,236." The tribunal awarded costs of £52,067.91 (approximately $67,044.76 at the current exchange rate) to reimburse DCT for fees of its legal advisors and expert and the expenses of the arbitration. *See* Hranitzky Declaration at Exhibit **C**. As such, the total damages due to DCT totals $485,755,717.80, excluding interest on the exclusivity claims (to be calculated at 3% simple interest) and interest between on the unpaid royalties claim (to be calculated at 3% compound interest) for the period after April 11, 2019.

### REQUEST FOR CONFIRMATION OF THE THIRD PARTIAL FINAL AWARD FOURTH PARTIAL FINAL AWARD

25.     The Third Partial Final Award and Fourth Partial Final Award were rendered in accordance with the parties' Concession Agreement in the London Arbitration proceedings commenced by Djibouti itself, in which it was represented by qualified external legal counsel (Gibson Dunn & Crutcher LLP) until the moment it chose no longer to participate in the proceedings, and are proper in all respects. The Awards arose out of a legal relationship that is commercial in nature and is not entirely between citizens of the United States; thereby falling within the purview of New York Convention, *See* 9 U.S.C. § 202; *Newco Ltd. v. Gov't of Belize*, 156 F. Supp. 3d 79, 80-82 (D.D.C. 2015) (holding arbitration award arising from a concession agreement was based on a commercial legal relationship).

26.     The Awards were issued in London in the United Kingdom, a country that is a signatory to the New York Convention. *See* New York Convention, Art. I.

27.     The Awards are final and binding within the meaning of the New York Convention and the FAA and are therefore binding on the parties, and subject to recognition and enforcement in the United States pursuant to the New York Convention and the FAA.

28.     The FAA and the New York Convention make recognition and enforcement mandatory except where any of certain narrow defenses are proved. *See* New York Convention, Arts. III, V; 9 U.S.C. § 207 (the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention"); *see also Thai-Law Lignite (Thailand) Co., Ltd. v. Gov't of Law People's Democratic Republic*, 864 F.3d 172, 179 (2d Cir. 2017). None of the defenses to the enforcement of an arbitral award is applicable here. Courts in the United States have little discretion to refuse to confirm an award under the FAA.

29.     There are no grounds to correct or vacate the Awards. Accordingly, none of the grounds for refusal or deferral of the Awards set forth in Article V of the New York Convention apply.[3]

30.     The burden of proof is on the party defending against enforcement of the arbitral award under the New York Convention. *Belize Bank Ltd.*, 191 F. Supp. 3d at 35 ("'[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation,' and the 'showing required to avoid summary confirmation is high.'") (internal citations omitted).

31.     This petition is timely because it is filed within three years after the issuance of both the Third Partial Final Award and Fourth Partial Final Award. *See* 9 U.S.C. § 207.

32.     On the date of filing this Petition, Petitioner commenced the process of providing notice of this Petition in accordance with the provisions in the Concession Agreement and the

---

[3] On April 21, 2019, DCT and DP World became aware of the existence of an April 10, 2019 petition that Djibouti had filed in its own Supreme Court, apparently seeking annulment of the Third Partial Final Award. However, as the arbitration is seated in London, United Kingdom, the Djiboutian courts have no legal authority or jurisdiction to annul the arbitration award. DCT

FSIA.[4]  *See* Hranitzky Declaration ¶ 11; 28 U.S.C. § 1608(a)(1) ("Service in the courts of the United States . . . shall be made upon a foreign state . . . by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state."); *Marlowe v. Argentine Naval Com'n*, 604 F. Supp. 703, 707-08 (D.D.C. 1985) (service of summons and complaint by mail was proper under the FSIA because the contract between the plaintiff and the defendant foreign state has a special agreement for the mailing of all notices, requests, demands, or other communications).

---

and DP World have not participated in these proceedings in Djibouti and the status of the proceedings is unknown.

[4]  The Concession Agreement at Paragraph 22.5 provides with respect to "Notices"

> Unless otherwise stated, notices to be given under this Agreement . . . shall be in writing and shall be given by hand delivery, recognized international courier, mail, telex or facsimile transmission and delivered or transmitted to the Parties at the addresses set forth in the Parties clause above, or such other address, telex number, or facsimile number as may be duly notified by the respective Parties from time to time, and shall be deemed to have been made or delivered: (i) in the case of any communication made by letter, when delivered by hand, by recognized international courier or by mail (registered, return receipt requested) at that address; and (ii) in the case of any communication made by telex or facsimile, when transmitted properly addressed to such telex number or facsimile number."

In the Parties clause, it states:

> The Republic of Djibouti, represented herein by the Chairman, Djibouti Ports and Free Zones Authority, . . . having its office at Djibouti Free Zone P.O BOX 197 Djibouti, Republic of Djibouti and the Port Autonome Internationale de Djibouti, the ports authority for the Republic of Djibouti, which has been established as a public company in the Republic of Djibouti under the law.;

During the course of the London Arbitration, the Tribunal permitted DCT to use email communications as a method of service of papers related to the arbitration.  *See* Hranitzky Declaration at Exhibit **H**.  Notice of this Petition was provided to Djibouti by email transmission to Mr. Aboubaker Omar Hadi, Chairman of the DPFZA and CEO of PDSA at aboubakeroh@dpfza.gov.dj, and Ms. Goumati Mohammed, Officer at the DPFZA and PDSA at goumati@dpfza.gov.dj.  Notice will also be provided to these individuals by recognized international courier.  *See* Hranitzky Declaration at ¶ 11.

33.     Petitioner is thus entitled to immediate confirmation, recognition and enforcement of the Awards pursuant to 9 U.S.C. § 207 and Article III of the New York Convention, and entry of judgment in favor of Petitioner and against Respondent in the full amount of the Awards, with the interest and costs as provided therein accruing through the date of this Court's judgment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that:

34.     The Court issue an order confirming the Third Partial Final Award and the Fourth Partial Final Award, as authorized by 9 U.S.C. §§ 207.

35.     The Court enter a judgment that confirms the Third Partial Final Award, as corrected by the Memorandum of Correction, and the Fourth Partial Final Award holding Djibouti liable to DCT and entering a money judgment as follows:

*On the Third Partial Final Award (as corrected);*

1. $87,947,236 for amounts due under Articles 7. 1.1 and 7. 1 .2(i) of the Concession Agreement;

2. $385.7 million in damages for the breach of Articles 3.6.2 and 3.6.3 of the Concession Agreement in respect of the development, commissioning and operation of the Doraleh Multipurpose Port;

3. Simple interest on the sum of $385.7 million at the rate of 3% per annum;

4. The legal and professional fees of the respondents incurred in connection with the arbitration of the counterclaims, in the amount of £492,336.96; and

5. The LCIA administration charges and the tribunal's fees of this Award, together totaling £83, 777.66.

*On the Fourth Partial Final Award:*

1. compound interest for amounts due under Articles 7. 1.1 and 7. 1 .2(i) of the Concession Agreement in the amount of $11,300,000 for the period up to April 11, 2019;

2. compound interest on the amount of $87,947,236 from the period after April 11, 2019 until the date of judgment; and

3.  legal fees in the amount of £42,029.80;

4.  The LCIA administration charges and the tribunal's fees of this Award, together totaling £10,038.11.

36.     The Court award pre-judgment interest from the date of the Third Partial Final Award and Fourth Partial Final Award until the date it enters judgment confirming the Final Award and post-judgment interest at the statutory rate.

37.     The Court retains jurisdiction over this action, and, pursuant to Rule 69 of the Federal Rules of Civil Procedure, permit any discovery that may be proper to aid in the enforcement of the judgment; and,

38.     Granting any other relief that this Court, in the interests of justice, deems necessary and proper.

DATED: September 14, 2020                    Respectfully submitted,

                                             QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP

                                             By:
                                                 _____
                                                 Dennis H. Hranitzky
                                                 Debra O'Gorman (pro hac vice to be filed)
                                                 Jianjian Ye (pro hac vice to be filed)
                                                 51 Madison Avenue, 22nd Floor
                                                 New York, NY 10010
                                                 212-849-7000 Main Office Number
                                                 212-849-7100 FAX


                                             *Counsel for Petitioner Doraleh Container Terminal SA*