# EXHIBIT C

# LONDON COURT OF INTERNATIONAL ARBITRATION LCIA
# No: 142732

# IN THE MATTER OF THE ARBITRATION ACT 1996

# AND IN THE MATTER OF AN ARBITRATION

BETWEEN:

(1) Republic of Djibouti
(2) Djibouti Ports and Free Zone Authority
(3) Port de Djibouti SA

<u>Claimants</u>

- and -

(1) DP World Djibouti FZCO
(2) Dubai (International) Djibouti FZE
(3) Doraleh Container Terminal SA

<u>Respondents</u>

---

## FOURTH PARTIAL FINAL AWARD: COMPOUND INTEREST ON THE RESPONDENTS' COUNTERCLAIM FOR UNPAID ROYALTIES

---

**The Tribunal**

Lord Hoffmann
Peter Leaver QC
Sir Richard Aikens (President)

Issued pursuant to The Rules of the
London Court of International Arbitration 1998 ("the LCIA Rules")

1

1. The terms and abbreviations used in this Award, which is the Tribunal's Fourth Partial Final Award in this reference, will be the same as those used in the Tribunal's first three Partial Final Awards in this reference.

2. The background facts and the findings and conclusions made in the Tribunal's first three Partial Final Awards are not repeated for the purposes of this Award, but this Award is made on the basis of those findings and conclusions.

3. In the Tribunal's Third Partial Final Award, issued to the parties on 29 March 2019, as corrected by the Memorandum of Corrections issued to the parties on 3 May 2019, the Tribunal determined (in paragraphs 38 to 45) that the first named claimant, the Republic of Djibouti, owed to the third named respondent, Doraleh Terminal SA, the sum of US$ 87,947,236, being sums due under Articles 7.1.1 and 7.1.2(i) of the Concession Agreement ("the unpaid royalties counterclaim"). Thus at paragraph (3) of the operative part of the Third Partial Final Award, as corrected, the Tribunal ordered that:

> "**THE REPUBLIC OF DJIBOUTI** (first named claimant) do pay to **DORALEH TERMINAL SA** (third named respondent) the sum of **US$ 87,947,236** being sums due under Articles 7.1.1 and 7.1.2(i) of the Concession Agreement".

4. In paragraphs 47 to 51 of the Tribunal's Third Partial Final Award, the Tribunal determined that compound interest should be paid on the outstanding unpaid royalties claim. In particular, at paragraph 50 of the Tribunal's Third Partial Final Award the Tribunal held that it was just and appropriate to award compound interest in respect of the unpaid royalties claim and that interest should accrue from the end of each year from 2011 to 2016 and at yearly rests thereafter for the total of each year's royalties due but unpaid. In the case of the 2017, for the purposes of the calculation of the unpaid royalties due and interest payable thereon, the Tribunal determined that the period should end on 30 June 2017. The Tribunal set the rate of interest payable at 3%.

5. Thus, at paragraph (4) of the operative part of the Tribunal's Third Partial Final Award, as corrected by the Memorandum of Corrections issued to the parties on 3 May 2019, the Tribunal ordered that:

2

> "**THE REPUBLIC OF DJIBOUTI** (first named claimant) do pay to **DORALEH TERMINAL SA** (third named respondent) interest on the sum of **US$ 87,947,236**, such interest to be paid in respect of the revenue lost for each year from 2011 to 2016 and for 2017 from 1 January to 30 June (inclusive), to be compounded at yearly rests from the date when the principal sum became due and payable. Such interest is to remain payable until the whole of the principal sum under (3) above has been paid".

6. In paragraph 51 of the Third Partial Final Award the Tribunal directed that the Respondents produce the figures for compound interest (showing the full working of how the figures were calculated) within 10 days of the production of that Award to the parties. The Tribunal further ordered that the Claimants would have 7 days thereafter to respond and that the Tribunal would issue a further Award setting out its award of the amount of compound interest on the royalties claimed up to the time of the Third Partial Final Award.

7. QE sent a letter to the Tribunal dated 12 April 2019 with which was enclosed a note by Dr Pablo Spiller headed "Royalty Counterclaim with Compound Interest" and dated 11 April 2019. (Dr Spiller had acted as expert for the respondents in the hearing leading to the Tribunal's First Partial Final Award). In this note Dr Spiller calculated the compound interest payable using the Tribunal's figures set out and explained in the Third Partial Final Award paragraphs 40 to 45. However, Dr Spiller calculated the compound interest payable up to and including **11 April 2019** rather than up to and including the date of the Third Partial Final Award (29 March 2019).

8. The figures set out and explained by Dr Spiller in his note of 11 April 2019 are as follows:

**TABLE 1: Unpaid Royalties Counterclaim. Calculation of compound interest and totals payable for the period 2011 to 30 June 2017 (inclusive).**

|  | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Total |
|---|---|---|---|---|---|---|---|---|
| Traffic at the Old Port (000s TEU) | 40.4 | 48.2 | 50.9 | 70.7 | 73.4 | 73.1 | 36.6 |  |
| Average revenue per TEU (USD/TEU) | 184.9 | 222.3 | 212.2 | 215.0 | 228.0 | 248.0 | 244.5 |  |
| Total revenue owed (USD Million) | 7.5 | 10.7 | 10.8 | 15.2 | 16.7 | 18.1 | 8.9 | 87.9 |
| Interest rate (%) | 3.0% | 3.0% | 3.0% | 3.0% | 3.0% | 3.0% | 3.0% |  |
| Years from end of period to today | 7.3 | 6.3 | 5.3 | 4.3 | 3.3 | 2.3 | 1.8 |  |
| Compound interest (USD Million) | 1.8 | 2.2 | 1.8 | 2.0 | 1.7 | 1.3 | 0.5 | 11.3 |
| Total revenue and interest owed as of April 11, 2018 (USD Million) | 9.3 | 12.9 | 12.6 | 17.2 | 18.4 | 19.4 | 9.4 | 99.2 |

9.  As is evident from the table above, Dr Spiller has calculated that the total compound interest payable in respect of the unpaid royalties counterclaim up to and including 11 April 2019 amounts to US$11,300,000.

10. The Tribunal has not received any communication from the Claimants or its advisors concerning either the issue of compound interest or the calculations of Dr Spiller.

11. The Tribunal has considered the calculations of Dr Spiller on the figures of compound interest. It accepts them, whist noting that the calculations go up to **11 April 2019** rather than the date of the issue of the Third Partial Final Award to the parties, viz 29 March 2019.

12. Accordingly, in this Award the Tribunal will award a figure of compound interest of US$11,300,000 which is payable by the Republic of Djibouti to Doraleh Terminal SA in respect of the period up to and including **11 April 2019.** However, as stated in paragraph (4) of the operative part of the Third Partial Final Award, interest remains payable (on a compound basis at yearly rests) on the whole of the principal sum of US$87,947,236 until it has been paid.

13. On 12 May 2019 (timed at 11.13 BST), the Tribunal sent an email to the parties, stating that it had considered Dr Spiller's note on compound interest and noting that there had been no response to Dr Spiller's note by either the Claimants or their advisors, despite the order in the Tribunal's Third Partial Final Award. The email noted that the Tribunal had prepared a draft award dealing with compound interest. The email continued:

> "However, before the draft award is finalized, the Tribunal requests the parties to make any submissions that they may have on the costs of the exercise of calculating the compound interest. The submissions should be in the form of an email or letter attached to an email addressed to the Tribunal, copied to the opposing party. The parties have 7 days to make these submissions, ie. by 9am on Monday 21 May 2019. If necessary the Tribunal will give time for any responses that may be needed. Will the parties please acknowledge receipt of this email".

14. QE, on behalf of the Respondents, acknowledged receipt of that email by email addressed to the Tribunal (and copied to the Claimants and its advisors) dated 13 May 2019 and timed at 10.48 BST. There was no acknowledgement from the Claimants or its advisors.

15. On 17 May 2019, QE, on behalf of the Respondents, wrote to the Tribunal on the issue of the costs of the exercise of calculating compound interest payable by the Claimant on the royalties claimed up to the time of the Third Partial Final Award. QE stated that the total costs of the exercise amounted to £9,983.30, which was made up of the professional fees of QE (£5,716.50) and the professional fees of Dr Spiller (US$6,800 or £4,266.80). The professional fees of QE included the fees incurred by corresponding with the Tribunal about the proposed corrections to the Third Partial Final Award.

16. QE's letter continued:

> "4. Furthermore, the Respondents seek an Award of the costs of defending the application for the stay of the proceedings filed by the Republic through Ms Chantal Tadoral, the purported provisional administrator of DCT, that was rejected by the Tribunal in its Decision dated 3 January 2019.
>
> 5. As the application was filed on 18 November 2019 *(sic)*, these costs were not included in the respondents' Cost Schedule dated 8 November 2019 *(sic)*. The Respondents' costs in defending the stay application comprise only the professional fees of this firm and total £32,046.50"

The 2019 dates in paragraph 5 of QE's letter should refer to 2018, of course.

17. Following receipt of this letter, the Tribunal wrote an email to the parties on 21 May 2019 (timed at 10.24 BST), which stated: "Given the fact that the letter [of QE dated 17 May 2019] refers to costs of [QE] and the Respondents other than in relation to the exercise of calculating the compound interest figures, the Tribunal will give the

5

Claimants and their advisors a further 7 days in which to respond". The Tribunal has received no response from the Claimants or their advisors.

18. The Tribunal has considered the Respondents' claim that the Claimants should pay the costs of the Respondents' legal advisors and their expert, Dr Spiller, in respect of (i) the exercise of calculating the compound interest (as explained above), (ii) the corrections to the Third Partial Final Award, and (iii) defending the application of the Claimants, through Mme Chantal Tadoral, to stay these arbitration proceedings. The Tribunal has concluded that the Respondents are entitled to the reasonable costs of those exercises. The usual rule is that costs follow the event. In relation to each of the three matters above: (i) The Respondents were found to be entitled to compound interest on the unpaid royalty sums. The compound interest figure had to be calculated as far as it could, because no payment was proffered by the Claimants. Therefore the Respondents should have the cost of the exercise of calculating the sums due, up to the time of the Third Partial Final Award. (ii) The corrections to that Award were necessary and it is reasonable that the Claimants should bear those costs, given that the Award was in favour of the Respondents. (iii) The Respondents were successful in defending the application to stay these arbitration proceedings so should have the costs of that exercise.

19. The Tribunal has considered the amounts claimed as costs by the Respondents as set out above. It regards them as reasonable. Therefore the Tribunal will make an Award of costs in those sums, which total £42,029.80.

**NOW, we, Peter Leaver QC, Leonard, Lord Hoffmann** and **Sir Richard Aikens,** having read and considered the note of Dr Spiller and the correspondence referred to above,

**AND** for the reasons stated above, **MAKE OUR FOURTH FINAL PARTIAL AWARD AS FOLLOWS:**

(1) **WE DECLARE** that the amount of compound interest payable on the sum of US$87,947,236, (being the sum due to the third named respondent under Articles 7.1.1 and 7.1.2(i) of the Concession Agreement - the unpaid royalties counterclaim) for the period up to and including 11 April 2019 is US$11,300,000.

(2) **WE ORDER THAT THE REPUBLIC OF DJIBOUTI** (the first named claimant) do pay to **DORALEH TERMINAL SA** (the third named respondent)

6

the sum of US$11,300,000 by way of such compound interest for the period up to and including 11 April 2019.

(3) **WE DECLARE THAT THE REPUBLIC OF DJIBOUTI** (the first named claimant) must further pay interest compounded at yearly rests for any further period from 12 April 2019 that elapses until payment of the principal sum of US$87,947,236 referred to in (1) above.

(4) **WE ORDER** that **THE REPUBLIC OF DJIBOUTI** (first named claimant) must pay:

    (a) The legal and professional fees of the respondents incurred in connection with the arbitration of the counterclaims, which we assess at £42,029.80 and

    (b) The LCIA administration charges and the tribunal's fees of this Award, together totalling £10,038.11.

(5) **WE RESERVE** to ourselves all outstanding matters arising out of or in connection with this reference, including but not limited to any dispute as to the amount of compound interest due for any period after 11 April 2019 and any further counterclaim for damages by the respondents in relation to the declaration made at (1)(b) of our THIRD PARTIAL FINAL AWARD.

Seat of the Arbitration: London, England.

Dated: 1 July 2019

Signed: ........................................          ........................................

    Peter Leaver QC                             Lord Hoffmann

........................................

Sir Richard Aikens

7