**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

DORALEH CONTAINER TERMINAL SA,

        Petitioner,

        -against-

REPUBLIC OF DJIBOUTI,

        Respondent.

Case No.: 1:20-cv-02571

**DECLARATION OF DEBRA O'GORMAN IN SUPPORT OF PETITION AND IN OPPOSITION TO RESPONDENT'S MOTION TO COMPEL**

Pursuant to 28 U.S.C. § 1746, I, Debra O'Gorman, hereby declare under penalty of perjury as follows:

1. I am an Of Counsel at Quinn, Emanual, Urquhart & Sullivan LLP, attorneys for Petitioner Doraleh Container Terminal SA, ("**DCT**") in the above-captioned action. I respectfully submit this Declaration in further support of DCT's Petition (defined below) and in opposition to Respondent Republic of Djibouti (the "**Republic**")'s motion to compel discovery to bring before the Court information regarding the procedural background in this matter and relevant documents.

2. On September 14, 2020, DCT filed the Petition to confirm and enforce two arbitration awards rendered against the Republic under the Federal Arbitration Act (the "**FAA**") and the New York Convention. Dkt. No. 1 (the "**Petition**").

3. On November 26, 2020, DCT served the Republic pursuant to 28 U.S.C. § 1608(a)(1), by hand-delivering to the Republic a copy of the summons, the Petition, and all supporting documents (the "**Service Documents**") in accordance with the Concession Agreement between DCT and the Republic. Dkt. No. 7.

1

4.    On February 15, 2021, the Republic sought dismissal of the Petition by contesting the validity of DCT's service of process, to which DCT timely responded on March 8, 2021. Dkt. Nos. 11, 14.

5.    During the pendency of the Republic's motion to dismiss, DCT took steps to effectuate service on the Republic under 28 U.S.C. § 1608(a)(3), in an abundance of caution and to avoid further delay. Dkt. Nos. 13, 14. This method of service required DCT to obtain costly translations of the Petition and related materials into French.

6.    On March 10, 2021, the Clerk of Court dispatched via DHL a package with the Service Documents (including translations) to the Republic pursuant to 28 U.S.C. § 1608(a)(3). However, the Republic *twice* refused delivery of the DHL package from the Clerk of Court, first on March 16, 2021 and again on April 7, 2021. Dkt. No. 22; Dkt. No. 22-1 ("DHL was not able to deliver this shipment … because the secretary refused the shipment."). After I learned of DHL's inability to make delivery because of the Republic's refusal of the package, on April 8, 2021, I contacted Matthew Madden, counsel for the Republic, and asked that he immediately instruct his client to accept service of the DHL package. Dkt. No. 22 ¶¶ 13, 14; Ex. A, at 1. On April 12, Mr. Madden informed me that he was unable to provide "the confirmation that you seek." Ex. A, at 1.

7.    DCT then effectuated service through diplomatic channels under 28 U.S.C. § 1608(a)(4). On July 12, 2021, the United States Embassy in Djibouti successfully transmitted the Service Documents to the Republic's Ministry of Foreign Affairs, although the Republic again purported to "refuse" service. Dkt. No. 25 ¶ 6. Attorneys at the US State Department then submitted proof of service on the Republic to the Clerk of Court and, on November 20, 2021, the Clerk of Court entered a notation on the docket that the response to the Petition was due on November 10, 2021, a date that had then passed.

8.      The Republic's counsel then asked DCT's counsel to agree to an extension for its already overdue Petition response and prepared a stipulation for signature. The parties entered into a stipulation on October 12, 2021 and it was So Ordered by the Court on October 27, 2021. Docket Nos. 25, 26.

9.      By agreeing in the stipulation that the Republic "will answer or otherwise respond to the Petition . . . within 60 days after the parties received [notice of service of the Petition]," the intent was to simply extend a professional courtesy to the Republic notwithstanding that the statutory deadline under 28 U.S.C. § 1608(d) for the Republic to respond to the Petition had already passed. There was no intent to take a position on the propriety of the form of the Republic's forthcoming submission or to vary the usual rules applicable in such a proceeding. Dkt. No. 25 at ¶ 8.

10.      On November 22, 2021, the Republic filed an answer with affirmative defenses (the "**Answer**") to the Petition. Dkt. No. 28. The Republic has not, to date, submitted any other response to the Petition.

11.      On December 10, 2021, without any prior discussion about the need for discovery or any effort to enter into a scheduling order or otherwise reach agreement on the scope and timing of discovery, the Republic served its First Set of Requests for Production and First Set of Interrogatories (the "**Discovery Requests**") on DCT. These requests seek a broad range of documents, including many privileged documents, concerning Quinn Emanuel's status as counsel and authority to act on behalf of DCT.

12.      On January 5, 2022, just after the New Year, I participated in a meet and confer discussion with counsel for the Republic regarding both the Discovery Requests and the decision to respond to the Petition with an Answer rather than the standard motion response pursuant to 9

U.S.C. § 6 which requires that "Any application to the court [under the FAA] shall be made and heard in the manner provided by law *for the making and hearing of motions*, except as otherwise herein expressly provided." (emphasis added).

13.     During this call, I pointed out DCT's non-compliance with the FAA in responding with an Answer, and that its Discovery Requests were improper and premature.  The Republic's counsel insisted that they were aware of other cases in which answers to petitions filed under the FAA were utilized and that discovery was permitted in such matters.  I then asked the Republic's counsel to share the legal authority for proceeding in this manner, but none was provided.

14.     On January 10, 2022, DCT served its responses and objections to the Discovery Requests.  In the cover email, my colleague Jianjian Ye followed up with the Republic's counsel via email to again ask for the legal authority to support its position:

> You mentioned on the call that there is authority in the D.C. Circuit permitting Djibouti to file an answer, rather than an opposition to DCT's petition to confirm arbitration awards, despite FAA's explicit wording to the contrary, but haven't supplied us with the details regarding this alleged authority.  9 U.S.C. 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided").  Would you please point us whatever authority you believe supports your position? Additionally, do you have any authority to support your position that discovery, which is rarely allowed in confirmation proceedings, is permissible at this stage without the court's leave?

A true and correct copy of this email correspondence is attached hereto as Exhibit B.

15.     Nearly two weeks went by with no response from the Republic's counsel regarding the propriety of proceeding by answer or discussion regarding DCT's objections to discovery.  In the absence of a response, DCT filed a letter on January 21, 2022, advising this Court of the impropriety of the Republic's Answer and Discovery Requests, and requesting that the Petition be resolved "on its merits."  Dkt. No. 30-1, at 2 ("**DCT Ltr.**").

4

16.     On February 3, 2022, I received an email from counsel for the Republic.  In the email, Mr. Madden mentioned that he had been unable to reach me by phone and asked that I "confirm [DCT's] opposition to [the Republic's] forthcoming motion seeking an order compelling responses to our discovery requests."  A true and correct copy of this email correspondence is attached hereto as Exhibit C.  Mr. Madden's email again failed to address any of the substantive legal issues DCT inquired about nearly a month before.  Ex. C, at 2.

17.     Later that day, I called Mr. Madden because I had not received a voicemail message from him (I later learned that Quinn Emanuel's telephone message system was not functioning properly).  I learned that Mr. Madden first reached out by phone on February 2 and that he left phone messages on that day and again on the morning of February 3, which I never received due to the telephone messaging system malfunction.  I informed Mr. Madden that I would respond to his email after conferring with my colleagues.

18.     On the same day, I emailed Mr. Madden to confirm DCT's intent to oppose the forthcoming motion to compel, while noting a willingness "to review and consider any authorities that [counsel for the Republic] contend supports your client's entitlement to discovery." Ex. C, at 1.  I noted again in my email that there had been no response to our request for legal authority to support the entitlement to discovery without leave of court.  *Id*.  I also provided my cell phone number (which is included in my standard email signature) in the event that Mr. Madden wanted to speak further by phone.

19.     Two hours later, counsel for the Republic went ahead and filed the motion to compel.  Dkt. No. 31.  Based on the foregoing, there was no genuine effort to meet and confer regarding the threshold issue of the Republic's entitlement to discovery before the motion to

5

compel was filed.  There was also no opportunity to discuss the substance of any of the Discovery Requests or the grounds for DCT's objections to discovery.

20.    Further attached as Exhibit D is a true and correct copy of a letter dated October 6, 2018 from Quinn Emanuel to the arbitration tribunal at the London Court of International Arbitration ("**LCIA**") for the case captioned LCIA No. 142732.

21.    I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on February 17, 2022, in Riverhead, New York.

_____
Debra O'Gorman