# EXHIBIT D

**quinn emanuel** trial lawyers | london

90 High Holborn, London WC1V 6LJ, United Kingdom | TEL +44 20 7653 2000| FAX +44 20 7653 2100

WRITERS' DIRECT DIAL NO.
**+44 20 7653 2000**

WRITERS' EMAIL ADDRESS
**billurquhart@quinnemanuel.com**
**tedgreeno@quinnemanuel.com**
**anthonysinclair@quinnemanuel.com**
**jagdishmenezes@quinnemanuel.com**
**jonathancooper@quinnemanuel.com**
**tinakang@quinnemanuel.com**

6 October 2018

**BY EMAIL**

Sir Richard Aikens
Brick Court Chambers
Essex Street
London WC2R 3LD
United Kingdom
RICHARD.AIKENS@BRICKCOURT.CO.UK

Mr Peter Leaver QC
One Essex Court
Essex Street
London EC4Y 9AR
United Kingdom
PL@OECLAW.CO.UK

Lord Leonard Hoffmann
Brick Court Chambers
Essex Street
London WC2R 3LD
United Kingdom
LEONARD.HOFFMANN@BRICKCOURT.CO.UK

Dear Members of the Tribunal,

**LCIA Arbitration No. 142732**
**Republic of Djibouti, Djibouti Ports and Free Zone Authority, and Port of Djibouti SA v. DP World Djibouti FZCO, Dubai (International) Djibouti FZE, and Doraleh Container Terminal SA**

In view of the upcoming hearing on the Respondents' counterclaims, scheduled for 9 November 2018, the Respondents hereby provide the Tribunal with a brief update in writing on events that have transpired in Djibouti in relation to the Doraleh Container Terminal (the **Terminal**), since the Tribunal's Partial Final Awards dated 20 February 2017 and 30 June 2017.

quinn emanuel urquhart & sullivan uk llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Quinn Emanuel Urquhart & Sullivan UK LLP is a limited liability partnership registered in England and Wales (with registered number OC337278) and is authorised and regulated by the Solicitors Regulation Authority.   A list of members and their professional qualifications is open to inspection at our registered office, 90 High Holborn, London WC1V 6LJ, United Kingdom.

While all the matters described below may not be entirely relevant to the adjudication of the Respondents' counterclaims, the Respondents' intention is to ensure that the Tribunal is fully aware of the factual context in which the counterclaims arise for determination, particularly given the decision of the Claimants to cease to participate in these proceedings.

If the Tribunal deems it necessary, the Respondents will update the Record of documents in these proceedings with the documents and correspondence relating to the events described that are referred to below.   Otherwise, the Respondents respectfully propose only to add such documents upon which they intend to rely.

### *The Republic's legislation targeting the Terminal*

The Tribunal's Partial Final Award dated 20 February 2017 dismissed the Claimants' attempt to rescind the Concession Agreement dated 30 October 2006 (**2006 Concession**).   Similar to the findings of Mr Justice Flaux in his judgment dated 2 March 2016 (*[2016] EWHC 405 (Comm)*), the Tribunal found that the terms of the 2006 Concession were fair and reasonable and that there was no evidence to support the Claimants' allegation that the terms were "soft" as a consequence of the alleged corrupting of Mr Boreh, which allegations had been proven false.

Despite these unequivocal findings in late 2017, the Government introduced legislation that was passed by the National Assembly (Law No. 202 / AN / 17 / 7th L on Strategic Infrastructure Contracts (**Law 202**)).   Law 202 allows the Government to demand the renegotiation of 'strategic infrastructure contracts'.   The only contract to which Law 202 has been applied is the 2006 Concession.

While the Respondents welcomed amicable negotiations with the Claimants, they refused to be strong-armed into renegotiating a properly negotiated commercial contract that had been held to be valid and binding by the High Court and this Tribunal.   The First and Third Respondents, DP World Djibouti FZCO (**DPWD**) and Doraleh Container Terminal SA (**DCT**), accordingly issued a Notice of Dispute to the Government on 19 February 2018 and commenced another arbitration at the LCIA the next day, 20 February 2018, under the 2006 Concession Agreement (LCIA Case No. 183886).   The LCIA appointed Professor Zachary Douglas QC as sole arbitrator (the **Douglas Arbitration**).

Two days later, on 22 February 2018, the First Claimant, the Republic, unlawfully seized physical control of the Terminal and expelled DPWD employees from the country.

On DCT and DPWD's application, Professor Douglas ruled on 31 July 2018 that notwithstanding Djibouti's new laws, the 2006 Concession Agreement, which is governed by English law, remained valid and binding.[1]   The Republic rejected the ruling of the Tribunal and refused to allow DP World back into Djibouti.

---

[1]     Partial Final Award (Professor Zachary Douglas QC), 31 July 2018, **R-341**.

2

*The Republic's unlawful attempt to interfere with DCT's management through PDSA*

As the Tribunal is aware, the Terminal is operated by DCT which is a joint venture company. The Republic, through its port company, the Third Claimant (Port de Djibouti S.A. (**PDSA**)), holds 66.66 percent shareholding in DCT.   DPWD holds the remaining 33.34 percent of DCT's shares.   The relations between PDSA and DPWD are governed by the Joint Venture Agreement (**JVA**) and DCT's Articles of Association (**Articles**), each dated 22 May 2007. The terms of the JVA and the Articles were negotiated to ensure that DCT would be managed by DPWD and that DPWD would retain control of DCT by being guaranteed a majority of directors on the board of DCT.

On 28 July 2018, two days before the Award discussed above was issued by Professor Douglas, PDSA sent DPWD a letter informing DPWD that it had decided to terminate the JVA.   It justified its action by alleging that DPWD had failed to act in DCT's best interests by initiating the Douglas Arbitration, and by claiming that the "core purpose" of the JVA, allegedly being to serve the 2006 Concession, no longer existed since the latter had been terminated by the Republic.

DPWD rejected PDSA's attempted termination of the JVA by letter dated 2 August 2018, by which time Professor Douglas' Award had determined that the 2006 Concession remained binding.   DPWD noted in that letter that PDSA had no legal or factual basis to terminate the JVA.   DPWD invited PDSA to withdraw its wrongful assertion within five days of its letter.

PDSA failed to respond within the stipulated time and instead, in further disregard of the parties' contractual rights and obligations, purported to call a shareholders' meeting scheduled to take place on 9 September 2018 to vote upon proposed resolutions for the removal of the directors appointed by DPWD from the Board of DCT and to replace them with directors nominated by PDSA.

DPWD anticipated that PDSA's purpose in seizing control of DCT was to obtain the benefit of DCT's assets, to compromise DCT's legal claims against the Republic (in these proceedings and in the Douglas Arbitration), to accept the termination of the Concession Agreement, or to wind up DCT, or all of these things.

Thus, DPWD applied for urgent injunctive relief from the High Court of England & Wales under Section 44(3) of the Arbitration Act 1996.   The High Court granted DPWD an *ex parte* injunction on 31 August 2018 in the terms sought restraining PDSA from proceeding as if the JVA were terminated and voting to remove DPWD's appointed directors at the proposed shareholders' meeting (the *ex parte* **Injunction**).[2]

On 5 September 2018 and in compliance with the terms of the *ex parte* Injunction, DPWD filed a request for arbitration under the JVA and DCT's Articles at the LCIA.   The LCIA has appointed Professor Maxi Scherer as sole arbitrator (the **Scherer Arbitration**).

On 9 September 2018, DPWD's representatives travelled to Djibouti to attend the Shareholders' Meeting, which was scheduled for 10 a.m. local time.   However, they were

---

[2]    Judgment and *ex parte* Order of Mr Justice Bryan, 31 August 2018, **R-342**.

3

turned away by reception staff at the designated location for the meeting, who informed them that no meeting was to take place that day and that they should check their email.

### *The Republic's alleged nationalisation of PDSA's shares in DCT*

At 9.40 a.m., DPWD's representatives received an email from PDSA's representatives stating that the meeting was adjourned as PDSA had just received notification of a presidential ordinance nationalising PDSA's shareholding in DCT.

The email from PDSA's representative attached a copy of a Presidential Ordinance, numbered 2018-001/PRE, dated 9 September 2018 (hence, issued that very morning), which purported to nationalise PDSA's shareholding in DCT (the **Ordinance**).

The precise legal effect of the Ordinance remains unclear, although PDSA's position appears to be that it is no longer a shareholder of DCT.   DCT and DPWD dispute that the Republic has validly become a shareholder in DCT; alternatively, it is submitted that it must be bound by DCT's Articles and the JVA.   The JVA and Articles stipulate a strict procedure to be followed for the transfer of shares by DCT's shareholders.   Both contracts have been previously ratified by the Republic by executive decree, thus giving them the status of law in Djibouti.   In the circumstances, DPWD contests any attempt by the Republic to exercise the rights of a shareholder of DCT or to interfere with DCT's Board or management. Alternatively, if the shares have been acquired by the Republic, DPWD's position is that the Republic is bound by the provisions of the JVA and the Articles, as is provided for in those agreements with respect to any transferee of the shares of DCT.

On 14 September 2018, at the 'Return Date' *inter partes* hearing on the *ex parte* Injunction (at which PDSA again did not participate), the High Court continued the injunction against PDSA until further order or award of the Tribunal in the Scherer Arbitration under the JVA or order of the Court.[3]   Moreover, the injunction was extended to cover 'Affiliates' of PDSA under the JVA, which would include the Republic, and to require PDSA to ensure that any transferee of the shares of DCT complies with the terms of the JVA and the Articles.

### *The local proceedings commenced in the Djiboutian Courts*

On 21 September 2018, DPWD's representatives received, apparently by way of service, a complaint by the Republic against DCT made to the Djiboutian Court of First Instance (Commercial Chamber).   The purpose of the proceedings include to declare invalid some of the clauses in the Articles (which are identical to those in the JVA) in relation to the appointment of directors to DCT's board as well as to annul a resolution of the Board dated 18 February 2018.   By this Board resolution, DCT's Board had authorised the commencement of the Douglas Arbitration against the Republic as well as litigation proceedings in Hong Kong against China Merchants.

DCT has been given until 23 October 2018 to file its response to the complaint.   DCT (and DPWD) intend to challenge the Court's jurisdiction since this dispute should be resolved by way of international arbitration either (i) in the Douglas Arbitration; (ii) in a new arbitration

---

[3]   Order of Mr Justice Teare, 14 September 2018 (sealed on 21 September), **R-343**.   A copy of the Approved judgment is yet to be received from the Court.

4

at the LCIA pursuant to Article 20 of the Concession Agreement, or; (iii) in the Scherer Arbitration, as between DPWD and PDSA.

Apparently, on 26 September 2018, the Republic also applied to the Djiboutian Court of First Instance in summary proceedings ("*référé*") for the appointment of a temporary administrator over DCT, alleging that the "*tensions*" between the shareholders necessitated such appointment.    It appears that the very next day, at a hearing at which neither DCT nor DPWD were present (since they were not notified), the Djiboutian Court    granted the Republic's request, appointing Ms Chantal Tadoral as DCT's provisional administrator.

DCT has since lodged a challenge before the Court against the appointment of the administrator on 4 October 2018, although the Court is yet to list the matter on its docket for hearing.[4]    Aside from the violations of local procedure and due process (which DCT has raised in its challenge), and the fact that it is disputed that the Republic has now become a shareholder in DCT, the Tribunal may note that the Republic's action in seeking the appointment of the administrator is plainly unlawful: this is a Reserved Matter that required DPWD's consent further to Clauses 8.5(c), 9.3 and 11.1(d) of the JVA.

Moreover, if the Republic considered there was a dispute over how DCT was being managed during the pendency of the arbitration between DPWD and PDSA that could not be resolved in the Scherer Arbitration (in which PDSA is participating), the Republic should have raised the matter in an arbitration under the Concession Agreement, given that the Republic and DCT have agreed to submit "*disputes or differences or claims of any kind…on any matter or thing…in any way connected with the rights, duties or liabilities of any party*" to international arbitration under Article 20 of the Concession Agreement.

Meanwhile, the Republic's local counsel has written to the purported provisional administrator of DCT claiming that this firm, Quinn Emanuel, can no longer act for DCT and DPWD as this allegedly amounts to a conflict of interest.

### Position of the Respondents in these proceedings

Neither DCT nor DPWD accept the authority of the purported provisional administrator to manage DCT and make decisions on its behalf.    Nor do they accept that there is any conflict of interest; DCT's interests are in safeguarding and upholding its contractual rights, and taking such steps as may be required to enforce them, and those interests are entirely aligned with DPWD.    The appointment of the provisional administrator is plainly an attempt by the Republic to misuse state power to interfere with DCT's claims in these proceedings, the Douglas Arbitration and the claim against China Merchants before the Hong Kong Court. We shall argue that, in any event, the purported provisional administrator is an instrumentality or agent of the Republic and the Republic is liable for any actions taken by the administrator that cause loss to DCT and DPWD.

DCT is entitled to maintain its counterclaims before the Tribunal, being authorised by a resolution of its Board dated 10 July 2013.[5]

---

[4]    DCT's challenge to the appointment of a provisional administrator, 4 October 2018, **R-344**.

[5]    DCT Board Resolution, 10 July 2013, **R-52**.

It must also be emphasised that there is no basis for the Republic to allege that Quinn Emanuel cannot represent DCT.   DCT's Board has authorised this firm to act for DCT in these proceedings in 2014 by a Power of Attorney dated 18 August 2014.   Moreover, an identical objection on an alleged conflict of interest caused by this firm acting for DCT and DPWD was raised by the Claimants in these proceedings, but subsequently dropped by the Claimants, unsurprisingly given its obvious lack of merit.[6]   The Claimants cannot raise the same objection again and must be deemed to have waived the objection.

In the circumstances, the Respondents' position is that the Tribunal should ignore any correspondence from the Republic (including through the purported provisional administrator of DCT), purporting to act on behalf of DCT, as regards the adjudication of the counterclaims.

Yours faithfully,

**QUINN EMANUEL URQUHART & SULLIVAN UK LLP**

*Copy*:   Mr Aboubaker Omar Hadi (*by email*)
ABOUBAKEROH@DPFZA.GOV.DJ

LCIA Registrar (*by email*)
CASEWORK@LCIA.ORG

---

[6]   Claimants' Statement of Case, 24 October 2014, paragraph 56; Claimants' Amended Reply, 3 August 2016, paragraph 89.