**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DORALEH CONTAINER TERMINAL SA,

*Petitioner*,

v.

REPUBLIC OF DJIBOUTI,

*Respondent*.

Case No. 1:20-cv-02571-TFH

**THE REPUBLIC OF DJIBOUTI'S REPLY IN SUPPORT OF ITS
<u>MOTION TO COMPEL LIMITED DISCOVERY</u>**

Matthew M. Madden (D.C. Bar No. 991139)
Jason A. Shaffer (D.C. Bar No. 888314607)
ROBBINS, RUSSELL, ENGLERT, ORSECK &
  UNTEREINER LLP
2000 K Street NW, 4th Floor
Washington, D.C. 20006
(202) 775-4500
mmadden@robbinsrussell.com

*Counsel for Respondent the Republic of Djibouti*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    The Republic's Motion To Compel Should Be Granted .................................................... 2

      A.    Whether DCT Authorized The Petition Is Relevant And Likely Dispositive
            .................................................................................................................. 2

      B.    Discovery Into Whether DCT Authorized The Petition Is Necessary ................... 4

      C.    Petitioner's Boilerplate Objections To The Requests Are Meritless ..................... 6

      D.    The Republic Met And Conferred With Petitioner In Good Faith ......................... 8

II.   The Republic Should Brief Its Opposition To The Petition After Discovery, And In
      Any Event Before The Petition Is Decided ..................................................................... 11

CONCLUSION ................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*,
316 F. Supp. 3d 22 (D.D.C. 2018) ...............................................................................10

*Abbott GmbH & Co. KG v. Yeda Rsch. & Dev. Co.*,
576 F. Supp. 2d 44 (D.D.C. 2008) ...............................................................................10

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*,
961 F. Supp. 2d 245 (D.D.C. 2013) ...............................................................................4

*Athridge v. Aetna Cas. & Sur. Co.*,
184 F.R.D. 181 (D.D.C.1998) .........................................................................................6

*Calbex Min. Ltd. v. ACC Res. Co.*,
No. 2:13-cv-00276 (W.D. Pa. Mar. 27, 2013) ............................................................12

*Chicago & Grand Trunk Ry. Co. v. Wellman*,
143 U.S. 339 (1892) .........................................................................................................3

*Commissions Import Export S.A. v. Republic of the Congo*,
No. 1:13-cv-00713-RJL (D.D.C. Sept. 24, 2014) .......................................................12

*Communist Party of U.S.A. v. Comm'r*,
332 F.2d 325 (D.C. Cir. 1964) .......................................................................................3

*Convertino v. DOJ*,
565 F. Supp. 2d 10 (D.D.C. 2008) .................................................................................7

*Ellipso, Inc. v. Mann*,
460 F. Supp. 2d 99 (D.D.C. 2006) ...............................................................................10

*Empresa Constructora Contex Limitada v. Iseki, Inc.*,
106 F. Supp. 2d 1020 (S.D. Cal. 2000) .........................................................................5

*English v. Washington Metro. Area Transit Auth.*,
323 F.R.D. 1 (D.D.C. 2017) ....................................................................................10, 11

*Frere v. Orthofix, Inc.*,
No. 99-cv-4049, 2000 WL 1789641 (S.D.N.Y. Dec. 6, 2000) .....................................4

*Glob. Gaming Phillipines, LLC v. Razon*,
No. 21-cv-02655-LGS-SN, 2021 WL 4219690 (S.D.N.Y. Sept. 16, 2021) ................5

*IFC Interconsul, AG v. Safeguard Int'l Partners, LLC*,
438 F.3d 298 (3d Cir. 2006) .........................................................................................13

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*,
    456 F. Supp. 2d 46 (D.D.C. 2006)......................................................................10

*Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*,
    113 U.S. 33 (1885)..............................................................................................3

*Lyeth v. Chrysler Corp.*,
    929 F.2d 891 (2d Cir. 1991)................................................................................5

*Moses v. Howard Univ. Hosp.*,
    606 F.3d 789 (D.C. Cir. 2010).............................................................................12

*In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal
    Grp., PLLC*,
    333 F.R.D. 291 (D.D.C. 2019)...........................................................................6, 7

*Nat. Res. Def. Council v. Curtis*,
    189 F.R.D. 4 (D.D.C.1999)..................................................................................6

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................................................12

*Pleasants v. Allbaugh*,
    208 F.R.D. 7 (D.D.C. 2002), on reconsideration, No. 00-cv-3094-JMF, 2002
    WL 31520105 (D.D.C. Nov. 12, 2002) ...............................................................6

*Pro–Football, Inc. v. Harjo*,
    191 F. Supp. 2d 77 (D.D.C.2002) ........................................................................6

*Process and Indus. Devs. Ltd. v. Federal Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ............................................................................4

*Raines v. Byrd*,
    521 U.S. 811 (1997)............................................................................................3

*Simon v. Eastern Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)..............................................................................................3

*Styrene Info. & Rsch. Ctr., Inc. v. Sebelius*,
    851 F. Supp. 2d 57 (D.D.C. 2012) .......................................................................11

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
    242 F.R.D. 1 (D.D.C. 2007)...............................................................................7, 8

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*United States v. All Assets Held at Bank Julius Baer & Co.*,
202 F. Supp. 3d 1 (D.D.C. 2016).......................................................................................10

*Valley Forge Christian Coll. v. Americans United for Separation of Church &
State, Inc.*, 454 U.S. 464 (1982).......................................................................................3

**Statutes**

9 U.S.C. § 6..........................................................................................................................12

9 U.S.C. § 207...............................................................................................................1, 2, 3, 4

**INTRODUCTION**

According to Petitioner Doraleh Container Terminal SA ("DCT"), its express stipulation that the Republic could file an "answer . . . to the Petition" meant no such thing. Understanding the word "answer" to mean "answer," Petitioner says, is a "tortured reading" of what it agreed to. That is meritless. But it is also academic. Petitioner now agrees that the Republic should get to file a brief in opposition to the Petition before the Petition is resolved on its merits. Pet'r Mem. in Opp. 5 n.2, Dkt. No. 33 (Feb. 17, 2022) ("Opp.").

That leaves only one question: Should the Court first compel responses to the Republic's discovery requests? The Republic's five document requests and five interrogatories all seek answers to straightforward questions: Who caused the Petition to be filed on DCT's behalf? And on what factual and legal grounds do they assert their authority to do so?

Counsel appearing for DCT, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), contends that such discovery is not relevant and necessary. "[T]he issue of Quinn Emanuel's authority to act on behalf of DCT," it says, "has no bearing on this Court's ability to confirm the arbitration awards under the [Federal Arbitration Act (FAA)] and need not be addressed by the Court." Opp. 2. In other words, Quinn Emanuel believes that this Court may enter judgment for DCT even though DCT did not authorize the Petition and seeks no relief.

That is demonstrably false. The FAA states that only a "*party to the arbitration* may apply . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207 (emphasis added). DCT's provisional administrator confirmed, in her declaration (Dkt. No. 31-1), that she has the exclusive authority to act on DCT's behalf, and that she did not authorize the Petition or counsel's appearance in DCT's name. DCT is not, as a matter of fact and law, the real petitioner here. That other entities filed the Petition without DCT's authorization means that this Court lacks subject matter jurisdiction over this action, and that those acting in

1

DCT's name are not entitled to the relief they seek. Indeed, a Petition filed without the Petitioner's consent likely does not even present a justiciable case or controversy.

At the very least, these important—and likely dispositive—questions require the minimal discovery that the Republic has requested. Answering those questions will not require endless proceedings. Once those questions are answered, this action can proceed expeditiously to final briefing and argument.

## ARGUMENT

## I.   The Republic's Motion To Compel Should Be Granted

### A.   Whether DCT Authorized The Petition Is Relevant And Likely Dispositive

Petitioner's principal objection to the Republic's discovery requests is that the question they aim to answer—whether DCT authorized the Petition filed in its name—is neither "relevant nor necessary" to adjudicating that Petition. Opp. 11. That is mistaken.

The FAA does not permit just anyone to enforce an arbitration award under the New York Convention. Rather, it makes clear that *only* a "party to the arbitration" may apply to do so. 9 U.S.C. § 207. If DCT did not authorize the Petition that was filed in its name, then the Petition was not, in fact, filed by a party to the arbitration. And if a party to the arbitration did not file the Petition, then this Court lacks subject matter jurisdiction over this action, and the entities purporting to act for and represent DCT are not entitled to the relief they seek. The FAA thus makes the authority question relevant, necessary, *and very likely dispositive here*.

Consider if the Petition had been captioned "Quinn Emanuel v. Republic of Djibouti." The Court presumably would dismiss that hypothetical petition because Quinn Emanuel was not a party to the arbitration and has no authority to enforce its awards. The result is no different where, as here, entities are masquerading as a party to the arbitration without that party's authorization.

2

Petitioner therefore misses the mark (at Opp. 11) by observing that an entity's lack of authority to seek confirmation does not appear among the New York Convention's list of substantive grounds for refusing to confirm an arbitration award. Under 9 U.S.C. § 207, a court need not even reach the New York Convention's defenses unless that court first concludes that the entity seeking confirmation was a "party to the arbitration."

Even more generally, a petition filed without the petitioner's authorization and approval likely does not present a justiciable case or controversy. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). That "is a 'bedrock requirement.'" *Id.* (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). It limits the power of federal courts to adjudicating "the legal rights of litigants in *actual controversies*." *Valley Forge*, 454 U.S. at 471 (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)) (emphasis added). Unless the petitioner has authorized and approved the Petition, the Petition presents no "real, earnest and vital controversy," and a federal court has no power to decide it. *Id.* (quoting *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892)).

Petitioner's initial letter to the Court did not assert that counsel's authority to file the Petition on DCT's behalf was *irrelevant*; it asserted only that such authority *should be presumed* until there was "substantial proof in the form of countervailing evidence that authority is lacking." Dkt. No. 30-1 ("Pet'r Ltr."), at 3 (quoting *Communist Party of U.S.A. v. Comm'r*, 332 F.2d 325, 328 (D.C. Cir. 1964)). Respondent has now provided that countervailing evidence: a declaration from DCT's provisional administrator, Ms. Chantal Tadoral. Tadoral explains that she is "fully and exclusively authorized to direct DCT's affairs" under the Djiboutian law that governs DCT.

3

Decl. of Chantal Tadoral ¶ 4, Dkt. No. 31-1 ("Tadoral Decl."). She "replaced the [former] managing corporate bodies of DCT," and since 2018 has been "excercis[ing] the former authority of DCT's board of directors." *Id.* She confirms that "Quinn Emanuel filed [the Petition] without [her] knowledge or consent," and that she has "authorized neither Quinn Emanuel nor any other firm to advise or represent DCT in these proceedings." *Id.* ¶ 5. She adds that any previous authorization from DCT's former board of directors, or from anyone else acting on DCT's behalf, neither covered this proceeding nor remains valid. *Id.* ¶ 6. Tadoral observes that Quinn Emanuel is "acting as counsel to DP World," DCT's minority shareholder, which lacks the authority to direct legal action on DCT's behalf. *Id.* ¶ 5.

Petitioner's pivot—now contending that none of this matters—is unpersuasive and should be rejected. Whether Quinn Emanuel is acting outside the bounds of 8-year-old authority overtaken by events, or at some other entity's behest, DCT did not authorize the Petition filed in its name. The Petition is not, therefore, made by "any party to the arbitration" that, under federal law, "may apply" for confirmation of an arbitration award. 9 U.S.C. § 207. That issue is highly relevant and necessary to the adjudication of the Petition.

### B.      Discovery Into Whether DCT Authorized The Petition Is Necessary

Petitioner concedes that discovery *is* available in confirmation proceedings whenever it "is 'relevant and necessary to the determination of an issue raised by' the Petition." Opp. 10–11 (quoting *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013), in turn quoting *Frere v. Orthofix, Inc.*, No. 99-cv-4049, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000)). In *Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*, for example, the D.C. Circuit held that "discovery," and even "trial," are "sometimes available" in "confirmation proceedings" under the FAA, even while observing that their occurrence is "more the exception than the rule." 962 F.3d 576, 586 (D.C. Cir. 2020). Petitioner recites cases in which

4

courts denied discovery based on the specific facts of those cases, but those courts, too, made clear that discovery is available to investigate relevant issues of fact and law bearing on a petition's resolution.[1]

Petitioner notes that the federal rules exempt confirmation proceedings from Rule 26's initial disclosure requirement, and suggests that the rules therefore "do not even contemplate discovery in confirmation proceedings." Opp. 8. But that interpretation of Rule 26 does not square with Petitioner's own admission that discovery *is* available in confirmation proceedings. Moreover, if discovery were verboten in confirmation proceedings, then Rule 26 would not need to exempt such proceedings from this one, specific discovery rule about initial disclosures. And finally, no authority states that discovery is categorically prohibited in any of the *other* kinds of actions exempted from Rule 26's initial disclosure requirement—such as habeas cases.

Petitioner also tries to lump this case in with those denying discovery about issues that a party could have raised during the arbitration. *See* Opp. 9. The analogy does not work. Here, the Republic seeks discovery about authority to file the Petition under the FAA and any other applicable federal laws. As a matter of simple logic, that question could not have been raised during the London arbitration well before the Petition had even been filed.

For much the same reason, Petitioner is also wrong that the arbitration "panel considered and addressed th[ese] issue[s]." Opp. 10. To state the obvious, the arbitration panel could not have decided whether a petition that would be filed months later in a U.S. court would accord with

---

[1] *See Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898 (2d Cir. 1991) ("Management of discovery lies within the sound discretion of the district court."); *Glob. Gaming Philippines, LLC v. Razon*, No. 21-cv-02655-LGS-SN, 2021 WL 4219690, at *2 (S.D.N.Y. Sept. 16, 2021) (discovery into "relevant and necessary" issues is available in confirmation proceedings); *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000) ("The district court is empowered to act in arbitration confirmation proceedings with respect to discovery.").

the FAA, give subject matter jurisdiction to the U.S. court, and entitle the entities who filed that petition to judicial relief.  Petitioner points to the arbitration panel's denial of a stay application filed by DCT's provisional administrator after her appointment.  *Id.*  But that ruling had nothing to do with whether DCT authorized the Petition filed in its name some 20 months later.  What is more, the panel expressly stated that it was *not* deciding who had authority to act for DCT.  The panel made clear that it had "not been invited to decide" legal and factual questions arising from the appointment of a provisional administrator to manage DCT, and so it did "not do so." Pet. Ex. I, Dkt. No. 1-10, at 3.

The Republic's discovery requests are thus not an "attempt to relitigate" issues that were, or even could have been, decided during the arbitration.  Opp. 10.  There are no concerns here about "undue challenges to arbitration awards" that might "defeat the finality and speedy dispute resolution expected of the arbitration procedure."  *Id.* at 8 (quoting *Revere Copper & Brass Inc. v. Overseas Priv. Inv. Corp.*, 628 F.2d 81, 83 n.1 (D.C. Cir. 1980) (per curiam)).  Rather, these discovery requests seek relevant and necessary information about whether the Petition is properly before this Court.

### C.   Petitioner's Boilerplate Objections To The Requests Are Meritless

In its written responses to the Republic's discovery requests, Petitioner objected to each request "as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."  Dkt. No. 31-4, at 7–11; Dkt. No. 31-5, at 6–10. That kind of boilerplate objection is "insufficient on its face."  *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002), on reconsideration, No. 00-cv-3094-JMF, 2002 WL 31520105 (D.D.C. Nov. 12, 2002).  Courts in this district "will not consider 'boilerplate' objections."  *Id.* (citing *Pro–Football, Inc. v. Harjo*, 191 F. Supp. 2d 77, 80 (D.D.C. 2002); *Nat. Res. Def. Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 191 (D.D.C.

6

1998)); *see also In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) ("boilerplate objections . . . carry no weight"); *Convertino v. DOJ*, 565 F. Supp. 2d 10, 13 (D.D.C. 2008) ("'boilerplate' objections" in list of "general objections" should be overruled "in their entirety").

Petitioner's opposition brief fares no better.  First, Petitioner repeats, without elaboration, that the Republic's requests "are broad and burdensome."  Opp. 13.  But, again, Petitioner "must do more than just state the objection."  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 8 (D.D.C. 2007).  It "must make a specific, detailed showing of how the [discovery] is burdensome" or "how it is over broad."  *Id.*  That showing requires "submitting affidavits or offering evidence which reveals the nature of the burden."  *Cooke Legal Grp.*, 333 F.R.D. at 295 (quoting *Tequila Centinela*, 242 F.R.D. at 10).  Petitioner "has failed to articulate, let alone demonstrate by affidavit or evidence, that compliance with the [discovery requests] would be overly burdensome or unfeasible."  *Id.*  Petitioner's unsupported allusions to "challenges associated with multi-jurisdictional discovery" and "local data security law issues" fall well short. Opp. 13.

Next, Petitioner contends that the requests are "vague and ambiguous" because they do not define the words "direct," "cause," and "authorize."  *Id.*  That objection is baseless.  The requests, for example, seek documents about DCT's "actions to direct, cause, or authorize—or attempt to direct cause, or authorize—the filing of the Petition on behalf of DCT."  Dkt. No. 31-2, at 3–4.  In context, those words describe "with sufficient specificity the documents requested."  *Cooke Legal Grp.*, 333 F.R.D. at 295.  Petitioner never attempts to describe the supposed ambiguity of those commonplace words in these requests.

Last, Petitioner asserts that some responsive documents might be privileged.  Opp. 13. Maybe so.  But that possibility is commonplace in civil discovery.  It is no reason for refusing to

provide relevant discovery altogether.  Rather, to assert any privilege claim, Petitioner must "describe the nature of the materials in a way that will enable" the Republic and the Court "to assess the applicability of the privilege."  *Tequila Centinela*, 242 F.R.D. at 8.  Because Petitioner "has yet to supply any sort of privilege log," the Court should order Petitioner to comply with the Republic's request and provide the Republic "with a privilege log where appropriate."  *Id.*

Finally, the Republic is ready and willing to meet and confer with counsel appearing for Petitioner about these discovery requests and a schedule for fulfilling them.  Yet Petitioner has stated that it will be "willing to meet and confer" about the requests *only* "after the Court has ruled on the Petition or otherwise orders that discovery may be taken."  *See, e.g.*, Dkt. No. 31-4, at 7. This Court should enter such an order compelling the discovery that the Republic seeks so that these discussions can take place.

D.    **The Republic Met And Conferred With Petitioner In Good Faith**

Petitioner argues that, even if its discovery objections are meritless (and they are), this Court nevertheless should deny Respondent's motion to compel because Respondent failed to meet and confer in good faith.  Not so.  Respondent's counsel conferred with Petitioner's counsel by telephone *twice* about the propriety of Respondent's discovery requests before filing its motion. Petitioner's written objections to those discovery requests also stated Petitioner's refusal to meet and confer further until this Court orders that discovery is allowed.  And *Petitioner*, not Respondent, first brought this dispute to the Court's attention by contending—in a letter that Petitioner sent to the Court with no prior notice to Respondent—that Respondent's discovery was "improper."  In any event, Petitioner persists in its wholesale objection to Respondent's discovery, even after reviewing Respondent's motion.  And so Petitioner cannot say how additional, pre-motion discussions could have possibly narrowed the parties' dispute.

First, the facts: Respondent's Answer to the Petition, filed on November 22, 2021, denied that those acting on behalf of DCT have the authority to do so, and explained why. *See* Dkt. No. 28. Two weeks later, Respondent followed up with document requests and interrogatories focused on that specific issue.

Respondent's and Petitioner's counsel met and conferred about those discovery requests by telephone on January 5, 2022. Petitioner's counsel stated that discovery, without prior leave of the Court, was impermissible. Petitioner's counsel then served written objections stating, as to each of Respondent's document requests and interrogatories, that Petitioner's counsel would meet and confer further *only* if this Court ordered that Respondent was entitled to discovery or the Petition had been resolved. *See, e.g.*, Dkt. No. 31-4, at 7. Even so, Petitioner's cover email accompanying those responses asked Respondent to provide authority that discovery is available to parties in confirmation proceedings, despite having offered Respondent no contrary authority.

Respondent's counsel began to prepare a reply to Petitioner's inquiry and objections. But before that reply could be finalized and sent, Petitioner's counsel filed a letter with the Court contending that the Petition is "unopposed" *and asserting to the Court* that Respondent's discovery requests are "improper." Dkt. No. 29. Petitioner's counsel did not give Respondent any advance notice of this filing, did not meet and confer with Respondent's counsel about it, and provided the Court no statement of Respondent's position.

Respondent thus prepared to file a response to Petitioner's letter, and motion to compel the discovery that Petitioner had already told the Court was "improper." Before filing that motion, Respondent asked Petitioner's counsel to re-confirm their repeatedly stated view that Respondent's discovery requests are improper. Petitioner's counsel confirmed as much, even while repeating its one-sided request for Respondent's supporting "authority."

After Respondent moved to compel, Petitioner's counsel asserted Respondent's failure to meet and confer. Respondent's counsel disagreed with that mischaracterization of the parties' communications, but *immediately* offered to withdraw the motion if, upon reviewing it, Petitioner had a change of heart. Yet less than 90 minutes after the motion was filed, Petitioner's counsel called the meet-and-confer issue "water under the bridge," and reiterated that Petitioner would continue to refuse Respondent's discovery requests in their entirety. *See* Ex. A, at 1.

As these facts demonstrate, Petitioner's contention that Respondent failed to meet and confer is meritless. Respondent's counsel spoke with Petitioner's counsel *twice*, by telephone, about this discovery dispute. And Petitioner's counsel made its position clear in those exchanges, in its written objections to the discovery requests, and in its own preemptive filing with this Court. Each of Petitioner's cited cases, in which Local Rule 7(m) was applied to deny a motion, involved circumstances in which a movant never spoke with the non-movant at all.[2] That is a far cry from the record here.

In any event, Petitioner has now doubled down on its refusal to respond to Respondent's discovery requests. Thus, even if the Court were to conclude that Respondent's meet-and-confer efforts were somehow lacking, then it still should, "in the interest of judicial economy, reach the merits of [the] motion despite the parties' failure to satisfy Local Civil Rule 7(m)." *English*, 323

---

[2] *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24 (D.D.C. 2018) (movant admitted its total failure to meet and confer); *United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 10–11 (D.D.C. 2016) (movant failed to meet and confer as had been "directed by the Court"); *Abbott GmbH & Co. KG v. Yeda Rsch. & Dev. Co.*, 576 F. Supp. 2d 44, 48 (D.D.C. 2008) (movant never had an in-person or telephone discussion with the non-movant); *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 25 (D.D.C. 2017) (movant sent only "perfunctory" emails); *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (both parties failed even to notify the other about their motions); *United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (movant never had an in-person or telephone discussion with the non-movant).

F.R.D. at 25 (citing *Styrene Info. & Rsch. Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 62 n.3 (D.D.C. 2012)).  That approach is especially merited where, as here, it is "highly unlikely that further discussions would narrow th[e] discovery dispute" and it is "likely futile" to require the parties to try to do so.  *Id.*

## II.    The Republic Should Brief Its Opposition To The Petition After Discovery, And In Any Event Before The Petition Is Decided

Petitioner states that it "does not oppose" letting the Republic file a brief in opposition to the Petition, so long as Petitioner gets a reasonable amount of time to reply.  Opp. 5 n.2. Respondent agrees.  To be sure, Respondent believes that these briefs should be filed after Respondent receives the necessary discovery discussed above, while Petitioner believes there should be no discovery before these briefs are filed.  But in either case, the parties now agree that each side should get to brief the Petition's merits before the Court decides the matter.

Despite that agreement on further briefing, Petitioner devotes four unnecessary pages to arguing that Respondent should have already filed a brief in opposition to the Petition, instead of filing an answer and seeking relevant discovery.  *See* Opp. 4–8.  Petitioner's agreement that Respondent may still file an opposition brief makes those arguments academic, yet two points merit response:

*First*, Petitioner (at Opp. 6–7) cannot avoid *its own stipulation* that Respondent was entitled to "*answer* or otherwise respond to the Petition."  Dkt. No. 26 ¶ 8 (emphasis added).  As Petitioner tells it, it is a "tortured reading" to understand Petitioner's stipulation that Respondent could file an "answer . . . to the Petition" to mean that Respondent actually could file an answer.  Opp. 6. Petitioner thus contends that it did not, by making that stipulation, "take a position on the propriety of the form of the Republic's forthcoming submission."  Opp. 6–7.

That is frivolous.  Petitioner's stipulation means what it says.  If Petitioner believed that Respondent could *not* file an answer, and had to file some other document, then it should have raised that issue with Respondent instead of expressly agreeing to the contrary.  As Petitioner concedes, other confirmation proceedings have proceeded, under the FAA and "without opposition" from the petitioner, by respondent first answering the petition and stating its defenses, followed by competing briefs on a petition's merits.  *See* Opp. 8 (describing *Commissions Import Export S.A. v. Republic of the Congo*, No. 1:13-cv-00713-RJL (D.D.C.), and *Calbex Min. Ltd. v. ACC Res. Co.*, No. 2:13-cv-00276 (W.D. Pa.)).

Petitioner also contends that, even if its stipulation means what it says, then this Court should ignore it because the FAA generally does not contemplate answers to confirmation petitions.  But having induced Respondent's reliance on Petitioner's express stipulation, Petitioner may not pull that prejudicial bait and switch.  *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position," the party "may not thereafter, simply because" the party's "interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken"); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) (same).  Moreover, the FAA provision stating that applications to confirm arbitration awards should proceed as "provided by law for the making and hearing of motions" does not preclude the parties from *agreeing* (or the Court from *ordering*) procedures and schedules for how such petitions will be opposed and briefed in specific cases.  9 U.S.C. § 6.  Petitioner cites no authority holding that 9 U.S.C. § 6 voids procedural stipulations and orders, or a single case in which such a stipulation has been set aside on that basis.

*Second*, Petitioner repeats its contention that Respondent's Answer should be *ignored completely*, and the Petition treated as "effectively unopposed."  Opp. 4; *see also* Pet'r Ltr. 2

(characterizing the Petition as "unopposed"). That argument is illogical, and Petitioner does not support it. Even if Respondent's Answer must be treated as Respondent's only opportunity to oppose the Petition—contrary to the parties' stipulation, to other cases that proceeded differently, and to Respondent's agreement to additional briefing in this case—the Answer was, in substance, an opposition to the Petition. *See IFC Interconsul, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 307–08 (3d Cir. 2006) (holding that captions and numbered paragraphs do not affect a document's treatment in a confirmation proceeding under the FAA).

As a result, even if this Court were to accept Petitioner's (half-hearted) invitation to consider the Petition "fully submitted" and "ripe for resolution," without discovery or further submissions, then judgment should be entered for Respondent. The Petition states on its face that a Djiboutian court appointed a provisional administrator for DCT. Respondent's Answer expressly denied that those purporting to act on DCT's behalf had the authority to file the Petition, because DCT's provisional administrator had not authorized them. The provisional administrator's declaration provides conclusive evidence in support of that ground to deny the Petition. For the reasons described above, *see supra* § I.A, the Petition cannot be granted because it is not, in fact, an application by DCT made by entities with the authority to act on DCT's behalf.

Petitioner has the burden to establish the standing, authority, and capacity of those bringing this action, and thus far has relied solely on a supposed "presumption" that counsel appearing on DCT's behalf is, in fact, authorized to do so. *See* Pet'r Ltr. 3.[3] Any such presumption, however,

---

[3] A footnote to Petitioner's brief (Opp. 12 n.5) adds that Quinn Emanuel's authority should also be presumed from its prior representation of DCT in the underlying arbitration. The footnote asserts that the Republic has provided "no evidence" that Quinn Emanuel's authority to represent DCT in that arbitration has been "validly revoked." That is incorrect. In her declaration, DCT's provisional administrator states that Quinn Emanuel's 2014 authorization to represent DCT in the London arbitration *never* extended to filing confirmation proceedings in U.S. court, and in any event did not survive the intervening governance change at DCT. *See* Tadoral Decl. ¶ 6 (Dkt.

has been conclusively rebutted by the declaration of DCT's provisional administrator.  On this record, if the Petition is treated as fully submitted and ripe for resolution, then Respondent is entitled to judgment.

## CONCLUSION

For these reasons, the Court should grant the Republic's Motion to Compel, and direct the parties to meet and confer on a schedule for final briefing once discovery has been completed.

Dated: February 24, 2022                      Respectfully submitted,

                                              /s/ Matthew M. Madden
                                              Matthew M. Madden (D.C. Bar No. 991139)
                                              Jason A. Shaffer (D.C. Bar No. 888314607)
                                              ROBBINS, RUSSELL, ENGLERT, ORSECK &
                                                UNTEREINER LLP
                                              2000 K Street NW, 4th Floor
                                              Washington, D.C. 20006
                                              (202) 775-4500
                                              mmadden@robbinsrussell.com

                                              *Counsel for Respondent the Republic of Djibouti*

---

No. 31-1).  At the very least, Ms. Tadoral's declaration *is* a clear revocation of any arguable authority that Quinn Emanuel had to pursue this action on DCT's behalf.

## <u>CERTIFICATE OF SERVICE</u>

On this 24th day of February 2022, I directed this document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system, which will send notification of this filing to all counsel of record.

/s/ Matthew M. Madden
Matthew M. Madden (D.C. Bar No. 991139)
ROBBINS, RUSSELL, ENGLERT, ORSECK &
  UNTEREINER LLP
2000 K Street NW, 4th Floor
Washington, D.C. 20006
(202) 775-4500
mmadden@robbinsrussell.com

*Counsel for Respondent the Republic of Djibouti*