# EXHIBIT F



**TADORAL CONSULTING**
*Expertise - Audit - Conseil*

Chantal TADORAL

Chartered Accountant
Auditor

Diplomed of ENC de Paris

Rue Clochette
BP. 4402 - Djibouti
Tél.   (+253) 21 34 11 67
        (+253) 21 34 43 00
Port. (+253) 77 87 19 50

Hargeisa city - Somaliland
Tél. (+252) 63 422 1040
E-mail:tadoralconsulting@yahoo.fr

Sir Richard Aikens

Brick Court Chambers

Essex Street

London WC2R 3LD

United Kingdom

richard.aikens@brickcourt.co.uk

Mr. Peter Leaver QC

One Essex Court

Essex Street

London EC4Y 9 AR

United Kingdom

pl@oeclaw.co.uk

Lord Leonard Hoffmann

Brick Court Chambers



Essex Street

London WC2R 3LD

United Kingdom

leonard.hoffmann@brickcourt.co.uk

Djibouti , December 1, 2018

*by email only*

**LCIA Arbitration No. 142723**

Dear Members of the Arbitral Tribunal

I refer to the letter from DPWD's counsel, Quinn Emanuel, dated November 26, 2018 and its attachments (the Letter).

I am very surprised by the tone of the Letter, which reveals a profound lack of respect for the courts of Djibouti and for my appointment as provisional administrator of DCT.

First, I solemnly dispute being « an instrumentality or agent of the Republic » as DPWD disrespectfully reffered to me in the Letter and apparently during the hearing held on November 9, 2018. In the same vein, the use of the defined terms «*the Republic's Letter* » by DPWD to make reference to the correspondence I sent to the Arbitral Tribunal on behalf of DCT is particularly offensive.

I hereby confirm that contrary to DPWD's groundless assertions, I am writing on behalf of the Third Respondent, and not on behalf of the Republic of Djibouti nor on behalf of the Claimants.

It follows that my application for a stay of the proceedings is not made on behalf of the Republic, to which I have absolutely no connection, but **on behalf of DCT**.

Secondly, i have been legally appointed by a court of competent jurisdiction in Djibouti to manage DCT for a temporary period of time. If my appointment is the consequence of an application lodged by the Republic of Djibouti, it has been decided by an independent jurisdiction in accordance with legal rules and priniples of Djibouti corporate and procedural law in light of the current conflicting situation among DCT 's shareholders.

The First Court Order was not rendered ex parte but by default because DCT (represented by DPWD appointed directors) failed to appear before the Djibouti District Court.

On October 9, 2018, without challenging the jurisdiction of the Djibouti courts DPWD challenged the First Court Order and thus participated in a fair hearing with the opportunity to defend its case in accordance with the adversarial principle. DPWD's challenge was dismissed and DPWD has appealed the Second Court Order on November 21, 2018.

The present arbitration is certainly not the proper forum to discuss my appointment. This is the subject of the proceedings before the Djibouti Court of Appeal whose jurisdiction has not been challenged by DPWD.

Thirdly, DPWD cannot ignore that DCT is a Djiboutian company incorporated in Djibouti and governed by the laws of that country.

As such, desicions rendered by Djibouti courts apply to DCT and there is no reason for DPWD to deny authority to the jurisdictions of a sovereign state by questioning, with no apparent reason, their independence and impartiality.

The two judicial decisions regarding my appointment are therefore valid and legally binding on all DCT's shareholders, including DPWD.

DPWD cannot therefore ask the Arbitral Tribunal to disregard my appointment in violation of Djibouti court decisions. Pursuant to Djibouti corporate law, which applies to DCT's governance and the relationships between its shareholders, DCT's Board of Directors is no longer in charge of the corporate affairs.

As a result, Quinn Emanuel cannot claim to be properly instructed to represent DCT in this arbitration.

Lastly I note that DPWD assumes that because I would be an « *agent or instrumentality* » of the Republic (which I strongly dispute), I would have had knowledge of a letter dated October 6, 2018, as well as correspondence between DPWD and the Arbitral Tribunal and minutes of the hearing held on November 9, 2018.

That is not the case.

I have not been copied on any correspondence relating to these proceedings where as DPWD knew that I had been appointed at least as from September 30, 2018 (when I personally



informed the Members of the Board of DCT and DCT's shareholders of my designation and provided them with a copy of the court decision). DPWD where by considers that it was not necessary to inform DCT's provisional administrator of ongoing proceedings and that it could pursue legal claims on behalf of a company it does not control, in flagrant breach of the two court orders.

DPWD has apparently moreover obtained in another arbitration on behalf of DCT (but subsequent to my designation) an interim order prohibiting the Republic of Djibouti from « *interfering* » with the said proceedings. DPWD and DCT together claimed in that arbitration that « *The Republic will now use the Administrator to attempt to procure DCT to withdraw its existing legal claims* » Again, whereas DPWD had full knowledge of my designation, it did not consider necessary to inform me that (i) it was pursuing claims in the name DCT and (ii) was challenging my legitimacy in proceedings involving DCT of which I was not even informed of the existence.

There is not doubt that this is not a genuine omission but a deliberate attempt from DPWD to circumvent the Djibouti court decisions, Djibouti corporate law, and extort from arbitral tribunals decisions based on willfully misleading information.

Contrary to what DPWD alleges, the dispute will not continue for years. The question of the validity of DCT's rules on governance have been referred to the Djibouti courts and the case will probably be determined before the end of the year or by the end of January 2019.

Since my appointment DPWD's appointed directors no longer have the legal authority to represent DCT and therefore lack standing in the arbitration. It is then imperative to stay the arbitration until the Djibouti courts of competent jurisdiction have made a determination as to the proper governance of DCT.

For all these reasons, I confirm that on behalf of the Third Respondent, I respectfully request the Arbitral Tribunal to order a stay of the aritration pending the resolution of the current dispute between DCT's shareholders in order to protect DCT's interests.

Yours faithfully,

Mrs Chantal TADORAL

Provisional Administrator of Doraleh Container Terminal SA

Copy : Quinn Emanuel Urquhart & Sullivan UK LLP

Mr Moktar Ghaleb