# EXHIBIT G

REPUBLIC OF DJIBOUTI                                    UNITY-EQUALITY-PEACE

### COURT OF FIRST INSTANCE

### CIVIL CHAMBER

### ORDER IN SUMARY PROCEEDINGS

**Case no. 74/18**
**Order no. 80/18 of 15/11/18**
**Year two thousand eighteen, fifteenth of November**

Us, **Madame NIMA MAHAMOUD NOUR,** President of the Court of First Instance of Djibouti, holding a hearing on summary proceedings in our office at the Palais de Justice, assisted by **Madame MANE IBRAHIM IDRISS,** Clerk of the Court, oath taken,

Have issued the following order:

<u>**BETWEEN**</u>

**THE COMPANY DORALEH CONTAINER TERMINAL S.A,** represented by **Mr. AYMAN**

Claimant

**Appearing in court,**

On one hand,

<u>**AND**</u>

**THE STATE OF DJIBOUTI,** represented by the Ministry of Budget, represented by **Mr. GHALEB**

Respondent,

**Appearing in court,**

On the other hand,

Ex. G - Page 1

**FACTS AND PROCEDURE**

By court order No. 72/18 of September 27th, 2018, the Commercial Chamber of the Court of First Instance, having heard the Claimant [and not] the Defendant, through summary proceedings, and in first instance:

According to the provisions of Articles L 113-1, L 362-1 *et seq*. of the Code of Civil Procedure, Article 52 of the Articles of Association of Doraleh Terminal Container (DCT); declared the Commercial Chamber, ruling in summary proceedings, to have jurisdiction to hear this dispute; found that there is a disagreement and a conflict between the shareholders which may hinder the proper operation of the company Doraleh Container.

Stated that the conditions for the appointment of a provisional administrator are met in this case.

As a consequence, designated Madame Chantal TADORAL as provisional administrator with the [same] powers granted by law to the corporate governing bodies [of the company].

Stated that the Provisional Administrator will replace the Board of Directors for the time necessary to resolve the crisis; sets the Administrator's fees at the sum of 400,000 FDJ per month from the date of this order until the end of her assignment to be claimed from DCT funds.

States that her assignment will end upon order by the court (*requête ou référé*).

Notes that this order is enforceable immediately, notwithstanding any appeal or opposition.

Orders the Defendant to pay the costs.

Following the authorization to oppose [the nomination of the provisional administrator] through summary proceedings, Doral Container Terminal was authorized to summon the State of Djibouti on October 11th, 2018 at 10 a.m. before the President of the Court of First Instance, for the purpose of declaring DCT's claim admissible and well-founded in its opposition, to declare that there was not sufficient time between the summons and the hearing, for DCT to prepare its defense.

Consequently, declares null and void the summary proceedings of September 26th, 2018 and the subsequent order of November 27th, 2018; in the alternative, declares the State of Djibouti incompetent to act in order to request the judicial appointment of a provisional administrator.

Consequently, withdraws the order of September 27th, 2018; in the further alternative, declares that the conditions for appointing a Provisional Administrator were not met.

In any event, orders the State of Djibouti to reimburse the costs incurred by DCT until Article L 381-6 of the Code of Civil Procedure.

2

The State of Djibouti, Defendant in these proceedings, filed written submissions at the hearing of October 11th, 2018.

The company Doraleh Container, Claimant in these proceedings, filed its Reply at the hearing of October 18th, 2018.

On October 8th, 2018, the judge decided to take the case under advisement until November 15th, 2018.

**GROUNDS OF THE DECISION**

**Concerning the invalidity of the summons and the order dated September 27th, 2018.**

Considering that Article L 362-2 of the Code of Civil Procedure provides that "the request shall be brought by way of summons to a hearing held for this purpose on the usual days and hours of the summary proceedings. If, however, the case needs to be expedited, the judge may allow the court to summon, at the time indicated, even on public or non-working days."

That under Article 362-3 of the same Code: "In any case, the judge shall ensure that sufficient time has elapsed between the summons and the hearing for the summoned party to have prepared its defense."

Considering that the claimant argues that the one-day period between the notification to the public prosecutor's office of the legal representative located abroad and the date of the hearing did not in any way allow DCT to be aware of the summons before the said hearing.

That this short period of time necessarily adversely affected it since DCT was not able to prepare its defense and was not represented at the hearing on September 27th, 2018.

Considering that there is no set minimum time required between the issuance of the summons and the hearing.

Considering that it is the judge's responsibility to verify whether the time between the summons and the hearing was sufficient to allow the summoned party to prepare its defense.

Whereas the articles cited by the claimant to support its argument do not provide for any invalidity in the event of non-compliance with the obligation cited above.

Considering that under the general principle of "no nullification without a written text", the judge cannot invalid something that is not expressly provided for in a written text, which is the case [here.]

3

Ex. G - Page 3

Considering that in the present case, because of the extreme urgency that prevailed in this case, the judge authorized the State of Djibouti to notify on September 26th, 2018 a hearing scheduled for September 27th, 2018, in an expedited manner.

Considering that the right of defense of DCT was hardly violated, since the order issued on September 27th, 2018 was rendered by default and DCT was authorized to file an opposition with the court that rendered the decision and thus, both parties were heard and the adversarial principle restored.

It is therefore appropriate to reject the invalidity claim submitted by the opposition Claimant as unfounded.

**On the lack of jurisdiction of the State of Djibouti due to its lack of shareholder status.**

Considering that DCT argues that the State of Djibouti would not be entitled to take action to request the appointment of a provisional administrator within DCT because the latter cannot claim to have a legitimate interest in the success of its claim.

Considering that Article 231-3 of the Code of Civil Procedure provides that "a party taking legal action must have a legitimate interest in the success or rejection of its claim and a standing to act."

Considering that under Presidential Order n°2018-001/PRE dated September 9th, 2018, the shares held by PAID and then PDSA in the share capital of DCT are transferred to the State. That PDSA held 66.66% of the shares.

Since this transfer, the State of Djibouti has become the majority shareholder with 66.66% of the shares in the capital of DCT.

Considering that, as a result, the State of Djibouti, as the majority shareholder, undoubtedly has a personal and legitimate interest in taking legal action in order to request that the dispute between it and its co-shareholder be resolved and to request the appointment of a provisional administrator.

Considering that the opposition Claimant argues that the transfer of shares between the majority government shareholder PAID and then PDSA and the State of Djibouti was made in violation of the provisions embodied in the Articles of Association of DCT and the shareholder agreement.

Considering that the State of Djibouti, the majority shareholder, claims not to have adhered to the shareholder agreement on the grounds that it was terminated by the government shareholder PSDA before the transfer of its shares to the State.

4

Ex. G - Page 4

Considering that the shareholder agreement was effectively terminated by PDSA on 28/07/18 and by Presidential Order No. 2018-001/PRE dated September 9th, 2018, PDSA's shareholding in DCT's capital was transferred to the State.

Considering that under article 1240 of the Djibouti Civil Code, "legally formed agreements shall be regarded as law for those who made them", that the DCT shareholder agreement was signed by PAID, now PSDA, and DPWD and not with the State.

Considering that the shareholders' agreement was terminated on July 28th, 2018 by the government shareholder PDSA before the State became a shareholder; that the shareholder agreement entered into between PAID, PDSA and DPWD was only binding on these two companies.

Considering that it is to contest this termination of the shareholders' agreement that DPWD initiated arbitration proceedings on September 5th, 2018 at the London Court of International Arbitration against PDSA.

That, in view of the aforementioned reasons, the State of Djibouti, as majority shareholder, is indeed entitled to take legal action so that the dispute between it and its co-shareholder DPWD can be resolved and therefore request the appointment of a provisional administrator.

**On the appointment of a provisional administrator**

Considering that DCT argues that the conditions for the appointment of a provisional administrator are not met in this case since the State does not report any conflict with the minority shareholder that paralyses the operation of DCT.

Considering that the appointment of an administrator by the judge who will replace the legal bodies while the crisis is being resolved is a serious and exceptional measure, it is neither provided for nor organized by law.

Considering that, according to settled case law, the judge is allowed to interfere in the management of a company in the event of paralysis of the corporate bodies and the presence of an imminent danger [for the company], and that the judge's intervention must be assessed in light of the interest of the company

Considering that, of course, disagreements between the shareholders do not justify the appointment of a provisional administrator as long as the corporate bodies are functioning normally.

Considering that, on the other hand, the appointment of a provisional administrator is necessary when these dissensions or conflicts between partners are such that they threaten  the sustainability of the company.

5

Considering that the State considers that its action aimed at appointing a director is in line with the protection of the corporate interest of DCT.

Considering that the latter claims that the shareholder agreement and the Articles of Association of DCT have given the minority shareholder, DPWD, exclusive power of control of the company.

Considering that the State declares that it is not bound by this agreement that was terminated before it became a shareholder.

Considering that DPWD claims that the State wants to protect not the corporate interest of DCT but its personal interest, which is to take control of DCT by ousting DPWD.

Considering that in August 2018, DPWD initiated proceedings before the judge of the High Court of London who prohibited PDSA, a former majority shareholder, from voting on a resolution it had submitted to the general meeting to dismiss the directors appointed by DPWD.

Considering that in the meantime, by presidential order of September 9th, 2018, the shares held by PDSA in the capital of DCT have been transferred to the State.

Considering that, for a second time, DPWD has initiated proceedings in the High Court of London which supplemented the injunction initially pronounced on 31/08/18 to prohibit PDSA from taking any action to transfer its shareholding to any transferee who is not already a party to the agreement contained in the DCT Articles of Association unless the transferee has undertaken to respect and enforce the provisions of this agreement by act of adherence as required under Article 11.7 of the Articles.

Considering that, for its part, the State initiated litigation on 20/09/18 summoning the company DCT to the commercial chamber of the court of first instance for the purpose of deeming unwritten the clauses and Articles of Association governing the distribution of powers within DCT.

Considering that these disagreements and conflicts between partners/shareholders hinder the proper operation of the company and therefore endanger the interests of the company.

In view of these reasons, the invalidity and inadmissibility raised by the Claimant should be rejected as unfounded.

Consequently, confirm the order for interim relief dated September 27th, 2018, even if opposed, which appointed Mrs. Chantal Tadoral as provisional administrator with the duties mentioned in the said order.

Considering that the Claimant in this case must bear the unrecoverable costs that the State had to incur for its defense and pay the State the sum of 1000.000.

6

Ex. G - Page 6

FD for unrecoverable costs in accordance with Articles 362-1.1 and 381-6 of the Code of Civil Procedure.

That the costs are to be borne by DCT.

**FOR THESE REASONS**

The Commercial Chamber of the Court of First Instance, ruling in summary proceedings, in presence of the parties, with regard to the parties, after deliberation and in the first instance.

In light of the provisions of Articles L 362-2 and 363-3 of the Code of Civil Procedure.

Rejects the invalidity and inadmissibility claims submitted by the claimant as unfounded.

Confirms the Interim Order no. 72/18 of September 27th, 2018 of the Commercial Chamber of the Court of First Instance ruling in interim proceedings.

Orders DCT to pay the State of Djibouti the sum of 1.000.000 FDJ as unrecoverable costs in accordance with Articles 362-1AL 1 and 381-6 of the Code of Civil Procedure.

Orders the company DCT, the Claimant, to pay the costs.

**CLERK OF THE COURT**                                                      **PRESIDENT**

7



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK    )
                                  )               ss:
COUNTY of NEW YORK   )

### _CERTIFICATE OF ACCURACY_

This is to certify that the attached document, "C-64" -- originally written in _French_ -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into _English_.

Dated: 2/3/2020

Susannah Smith
Susannah Smith
Project Manager
Consortra Translations

Sworn to and signed before ME
This 3rd day of February, 2020

Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong