# EXHIBIT I



**LCIA ARBITRATION RULES**

**Effective 1 January 1998**

Where any agreement, submission or reference provides in writing and in whatsoever manner for arbitration under the rules of the LCIA or by the Court of the LCIA ("the LCIA Court"), the parties shall be taken to have agreed in writing that the arbitration shall be conducted in accordance with the following rules ("the Rules") or such amended rules as the LCIA may have adopted hereafter to take effect before the commencement of the arbitration. The Rules include the Schedule of Costs in effect at the commencement of the arbitration, as separately amended from time to time by the LCIA Court.

**CONTENTS**

Article 1       The Request for Arbitration
Article 2       The Response
Article 3       The LCIA Court and Registrar
Article 4       Notices and Periods of Time
Article 5       Formation of the Arbitral Tribunal
Article 6       Nationality of Arbitrators
Article 7       Party and Other Nominations
Article 8       Three or More Parties
Article 9       Expedited Formation
Article 10      Revocation of Arbitrator's Appointment
Article 11      Nomination and Replacement Arbitrators
Article 12      Majority Power to Continue Proceedings
Article 13      Communications
Article 14       Conduct of the Proceedings
Article 15      Submission of Written Statements and Documents
Article 16      Seat of Arbitration and Place of Hearings
Article 17      Language of Arbitration
Article 18      Party Representation
Article 19      Hearings
Article 20      Witnesses
Article 21      Experts to the Arbitral Tribunal
Article 22      Additional Powers of the Arbitral Tribunal
Article 23      Jurisdiction of the Arbitral Tribunal
Article 24      Deposits
Article 25      Interim and Conservatory Measures
Article 26      The Award
Article 27      Correction of Awards and Additional Awards
Article 28      Arbitration and Legal Costs
Article 29      Decisions by the LCIA Court
Article 30      Confidentiality
Article 31      Exclusion of Liability
Article 32      General Rules

**Article 1        The Request for Arbitration**

1.1       Any party wishing to commence an arbitration under these Rules ("the Claimant") shall send to the Registrar of the LCIA Court ("the Registrar") a written request for arbitration ("the Request"), containing or accompanied by:

(a)       the names, addresses, telephone, facsimile, telex and e-mail numbers (if known) of the parties to the arbitration and of their legal representatives;

(b)       a copy of  the written arbitration clause or separate written arbitration agreement invoked by the Claimant ("the Arbitration Agreement"), together with a copy of the contractual documentation in which the arbitration clause is contained or in  respect of  which the arbitration arises;

(c)       a brief statement describing the nature and circumstances of the dispute, and specifying the claims advanced by the Claimant against another party to the arbitration ("the Respondent");

(d)       a statement of any matters (such as the seat or language(s) of the arbitration, or the number of arbitrators, or their qualifications or identities) on which the parties have already agreed in writing for the arbitration or in respect of which the Claimant wishes to make a proposal;

(e)       if the Arbitration Agreement calls for party nomination of arbitrators, the name, address, telephone, facsimile, telex and e-mail numbers (if known) of the Claimant's nominee;

(f)       the fee prescribed in the Schedule of Costs (without which the Request shall be treated as not having been received by the Registrar and the arbitration as not having been commenced);

(g)       confirmation to the Registrar that copies of the Request  (including all accompanying documents) have been or are being served simultaneously on all other parties to the arbitration by one or more means of service to be identified in such confirmation.

1.2       The date of receipt by the Registrar of the Request shall be treated as the date on which the arbitration has commenced for all purposes.  The Request (including all accompanying documents) should be submitted to the Registrar in two copies where a sole arbitrator should be appointed, or, if the parties have agreed or the Claimant considers that three arbitrators should be appointed, in four copies.

**Article 2        The Response**

2.1       Within 30 days of service of the Request on the Respondent, (or such lesser period fixed by the LCIA Court), the Respondent shall send to the Registrar a written response to the Request ("the Response"), containing or accompanied by:

(a)       confirmation or denial of all or part of the claims advanced by the Claimant in the Request;

(b)       a brief statement describing the nature and circumstances of any counterclaims advanced by the Respondent against the Claimant;

(c)       comment in response to any statements contained in the Request, as called for under Article 1.1(d), on matters relating to the conduct of the arbitration;

(d)       if the Arbitration Agreement calls for party nomination of arbitrators, the name, address, telephone, facsimile, telex and e-mail numbers (if known) of the Respondent's nominee; and

(e)       confirmation to the Registrar that copies of the Response (including all accompanying documents) have been or are being served simultaneously on all other parties to the arbitration by one or more means of service to be identified in such confirmation.

Ex. I - Page 2

2.2     The Response (including all accompanying documents) should be submitted to the Registrar in two copies, or if the parties have agreed or the Respondent considers that three arbitrators should be appointed, in four copies.

2.3     Failure to send a Response shall not preclude the Respondent from denying any claim or from advancing a counterclaim in the arbitration.  However, if the Arbitration Agreement calls for party nomination of arbitrators, failure to send a Response or to nominate an arbitrator within time or at all shall constitute an irrevocable waiver of that party's opportunity to nominate an arbitrator.

**Article 3        The LCIA Court and Registrar**

3.1     The functions of the LCIA Court under these Rules shall be performed in its name by the President or a Vice-President of the LCIA Court or by a division of three or five members of the LCIA Court appointed by the President or a Vice-President of the LCIA Court, as determined by the President.

3.2     The functions of the Registrar under these Rules shall be performed by the Registrar or any deputy Registrar of the LCIA Court under the supervision of the LCIA Court.

3.3     All communications from any party or arbitrator to the LCIA Court shall be addressed to the Registrar.

**Article 4        Notices and Periods of Time**

4.1     Any notice or other communication that may be or is required to be given by a party under these Rules shall be in writing and shall be delivered by registered postal or courier service or transmitted by facsimile, telex, e-mail or any other means of telecommunication that provide a record of its transmission.

4.2     A party's last-known residence or place of business during the arbitration shall be a valid address for the purpose of any notice or other communication in the absence of any notification of a change to such address by that party to the other parties, the Arbitral Tribunal and the Registrar.

4.3     For the purpose of determining the date of commencement of a time limit, a notice or other communication shall be treated as having been received on the day it is delivered or, in the case of telecommunications, transmitted in accordance with Articles 4.1 and 4.2.

4.4     For the purpose of determining compliance with a time limit, a notice or other communication shall be treated as having been sent, made or transmitted if it is dispatched in accordance with Articles 4.1 and 4.2 prior to or on the date of the expiration of the time-limit.

4.5     Notwithstanding the above, any notice or communication by one party may be addressed to another party in the manner agreed in writing between them or, failing such agreement, according to the practice followed in the course of their previous dealings or in whatever manner ordered by the Arbitral Tribunal.

4.6     For the purpose of calculating a period of time under these Rules, such period shall begin to run on the day following the day when a notice or other communication is received.  If the last day of such period is an official holiday or a non-business day at the residence or place of business of the addressee, the period is extended until the first business day which follows.  Official holidays or non-business days occurring during the running of the period of time are included in calculating that period.

4.7     The Arbitral Tribunal may at any time extend (even where the period of time has expired) or abridge any period of time prescribed under these Rules or under the Arbitration Agreement for the conduct of the arbitration, including any notice or communication to be served by one party on any other party.

Ex. I - Page 3

**Article 5          Formation of the Arbitral Tribunal**

5.1     The expression "the Arbitral Tribunal" in these Rules includes a sole arbitrator or all the arbitrators where more than one. All references to an arbitrator shall include the masculine and feminine. (References to the President, Vice-President and members of the LCIA Court, the Registrar or deputy Registrar, expert, witness, party and legal representative shall be similarly understood).

5.2      All arbitrators conducting an arbitration under these Rules shall be and remain at all times impartial and independent of the parties; and none shall act in the arbitration as advocates for any party. No arbitrator, whether before or after appointment, shall advise any party on the merits or outcome of the dispute.

5.3     Before appointment by the LCIA Court, each arbitrator shall furnish to the Registrar a written resume of his past and present professional positions; he shall agree in writing upon fee rates conforming to the Schedule of Costs; and he shall sign a declaration to the effect that there are no circumstances known to him likely to give rise to any justified doubts as to his impartiality or independence, other than any circumstances disclosed by him in the declaration. Each arbitrator shall thereby also assume a continuing duty forthwith to disclose any such circumstances to the LCIA Court, to any other members of the Arbitral Tribunal and to all the parties if such circumstances should arise after the date of such declaration and before the arbitration is concluded.

5.4     The LCIA Court shall appoint the Arbitral Tribunal as soon as practicable after receipt by the Registrar of the Response or after the expiry of 30 days following service of the Request upon the Respondent if  no Response is received by the Registrar (or such lesser period fixed by the LCIA Court).  The LCIA Court may proceed with the formation of the Arbitral Tribunal notwithstanding that the Request is incomplete or the Response is missing, late or incomplete. A sole arbitrator shall be appointed unless the parties have agreed in writing otherwise, or unless the LCIA Court determines that in view of all the circumstances of the case a three-member tribunal is appropriate.

5.5     The LCIA Court alone is empowered to appoint arbitrators. The LCIA Court will appoint arbitrators with due regard for any particular method or criteria of selection agreed in writing by the parties.  In selecting arbitrators consideration will be given to the nature of the transaction, the nature and circumstances of the dispute, the nationality, location and languages of the parties and (if more than two) the number of parties.

5.6     In the case of a three-member Arbitral Tribunal, the chairman (who will not be a party-nominated arbitrator) shall be appointed by the LCIA Court.

**Article 6          Nationality of Arbitrators**

6.1     Where the parties are of different nationalities, a sole arbitrator or chairman of the Arbitral Tribunal shall not have the same nationality as any party unless the parties who are not of the same nationality as the proposed appointee all agree in writing otherwise.

6.2     The nationality of parties shall be understood to include that of controlling shareholders or interests.

6.3     For the purpose of this Article, a person who is a citizen of two or more states shall be treated as a national of each state; and citizens of the European Union shall be treated as nationals of its different Member States and shall not be treated as having the same nationality.

**Article 7          Party and Other Nominations**

7.1     If the parties have agreed that any arbitrator is to be appointed by one or more of them or by any third person, that agreement shall be treated as an agreement to nominate an arbitrator for all purposes. Such nominee may only be appointed by the LCIA Court as arbitrator subject to his prior compliance with Article 5.3.  The LCIA Court may refuse to

appoint any such nominee if it determines that he is not suitable or independent or impartial.

7.2     Where the parties have howsoever agreed that the Respondent or any third person is to nominate an arbitrator and such nomination is not made within time or at all, the LCIA Court may appoint an arbitrator notwithstanding the absence of the nomination and without regard to any late nomination.  Likewise, if the Request for Arbitration does not contain a nomination by the Claimant where the parties have howsoever agreed that the Claimant or a third person is to nominate an arbitrator, the LCIA Court may appoint an arbitrator notwithstanding the absence of the nomination and without regard to any late nomination.

## Article 8        Three or More Parties

8.1     Where the Arbitration Agreement entitles each party howsoever to nominate an arbitrator, the parties to the dispute number more than two and such parties have not all agreed in writing that the disputant parties represent two separate sides for the formation of the Arbitral Tribunal as Claimant and Respondent respectively, the LCIA Court shall appoint the Arbitral Tribunal without regard to any party's nomination.

8.2     In such circumstances, the Arbitration Agreement shall be treated for all purposes as a written agreement by the parties for the appointment of the Arbitral Tribunal by the LCIA Court.

## Article 9        Expedited Formation

9.1     In exceptional urgency, on or after the commencement of the arbitration, any party may apply to the LCIA Court for the expedited formation of the Arbitral Tribunal, including the appointment of any replacement arbitrator under Articles 10 and 11 of these Rules.

9.2     Such an application shall be made in writing to the LCIA Court, copied to all other parties to the arbitration; and it shall set out the specific grounds for exceptional urgency in the formation of the Arbitral Tribunal.

9.3     The LCIA Court may, in its complete discretion, abridge or curtail any time-limit under these Rules for the formation of the Arbitral Tribunal, including service of  the Response and of any matters or documents adjudged to be missing from the Request.  The LCIA Court shall not be entitled to abridge or curtail any other time-limit.

## Article 10        Revocation of Arbitrator's Appointment

10.1    If either (a) any arbitrator gives written notice of his desire to resign as arbitrator to the LCIA Court, to be copied to the parties and the other arbitrators (if any) or (b) any arbitrator dies, falls seriously ill, refuses, or becomes unable or unfit to act, either upon challenge by a party or at the request of the remaining arbitrators, the LCIA Court may revoke that arbitrator's appointment and appoint another arbitrator. The LCIA Court shall decide upon the amount of fees and expenses to be paid for the former arbitrator's services (if any) as it may consider appropriate in all the circumstances.

10.2    If any arbitrator acts in deliberate violation of the Arbitration Agreement (including these Rules) or does not act fairly and  impartially as between the parties or does not conduct or participate in the arbitration proceedings with reasonable diligence, avoiding unnecessary delay or expense, that arbitrator may be considered unfit in the opinion of the LCIA Court.

10.3    An arbitrator may also be challenged by any party if circumstances exist that give rise to justifiable doubts as to his impartiality or independence.  A party may challenge an arbitrator it has nominated, or in whose appointment it has participated, only for reasons of which it becomes aware after the appointment has been made.

10.4    A party who intends to challenge an arbitrator shall, within 15 days of the formation of the Arbitral Tribunal or (if  later) after becoming aware of any circumstances referred to in Article 10.1, 10.2 or 10.3, send a written statement of the reasons for its challenge to

5

the LCIA Court, the Arbitral Tribunal and all other parties. Unless the challenged arbitrator withdraws or all other parties agree to the challenge within 15 days of receipt of the written statement, the LCIA Court shall decide on the challenge.

### Article 11    Nomination and Replacement of Arbitrators

11.1    In the event that the LCIA Court determines that any nominee is not suitable or independent or impartial or if an appointed arbitrator is to be replaced for any reason, the LCIA Court shall have a complete discretion to decide whether or not to follow the original nominating process.

11.2    If the LCIA Court should so decide, any opportunity given to a party to make a re-nomination shall be waived if not exercised within 15 days (or such lesser time as the LCIA Court may fix), after which the LCIA Court shall appoint the replacement arbitrator.

### Article 12    Majority Power to Continue Proceedings

12.1    If any arbitrator on a three-member Arbitral Tribunal refuses or persistently fails to participate in its deliberations, the two other arbitrators shall have the power, upon their written notice of such refusal or failure to the LCIA Court, the parties and the third arbitrator, to continue the arbitration (including the making of any decision, ruling or award), notwithstanding the absence of the third arbitrator.

12.2    In determining whether to continue the arbitration, the two other arbitrators shall take into account the stage of the arbitration, any explanation made by the third arbitrator for his non-participation and such other matters as they consider appropriate in the circumstances of the case. The reasons for such determination shall be stated in any award, order or other decision made by the two arbitrators without the participation of the third arbitrator.

12.3    In the event that the two other arbitrators determine at any time not to continue the arbitration without the participation of the third arbitrator missing from their deliberations, the two arbitrators shall notify in writing the parties and the LCIA Court of such determination; and in that event, the two arbitrators or any party may refer the matter to the LCIA Court for the revocation of that third arbitrator's appointment and his replacement under Article 10.

### Article 13    Communications between Parties and the Arbitral Tribunal

13.1    Until the Arbitral Tribunal is formed, all communications between parties and arbitrators shall be made through the Registrar.

13.2    Thereafter, unless and until the Arbitral Tribunal directs that communications shall take place directly between the Arbitral Tribunal and the parties (with simultaneous copies to the Registrar), all written communications between the parties and the Arbitral Tribunal shall continue to be made through the Registrar.

13.3    Where the Registrar sends any written communication to one party on behalf of the Arbitral Tribunal, he shall send a copy to each of the other parties. Where any party sends to the Registrar any communication (including Written Statements and Documents under Article 15), it shall include a copy for each arbitrator; and it shall also send copies direct to all other parties and confirm to the Registrar in writing that it has done or is doing so.

### Article 14    Conduct of the Proceedings

14.1    The parties may agree on the conduct of their arbitral proceedings and they are encouraged to do so, consistent with the Arbitral Tribunal's general duties at all times:

(i) to act fairly and impartially as between all parties, giving each a reasonable opportunity of putting its case and dealing with that of its opponent; and

(ii) to adopt procedures suitable to the circumstances of the arbitration, avoiding

6

unnecessary delay or expense, so as to provide a fair and efficient means for the final resolution of the parties' dispute.

Such agreements shall be made by the parties in writing or recorded in writing by the Arbitral Tribunal at the request of and with the authority of the parties.

14.2    Unless otherwise agreed by the parties under Article 14.1, the Arbitral Tribunal shall have the widest discretion to discharge its duties allowed under such law(s) or rules of law as the Arbitral Tribunal may determine to be applicable; and at all times the parties shall do everything necessary for the fair, efficient and expeditious conduct of the arbitration.

14.3    In the case of a three-member Arbitral Tribunal the chairman may, with the prior consent of the other two arbitrators, make procedural rulings alone.

**Article 15        Submission of Written Statements and Documents**

15.1    Unless the parties have agreed otherwise under Article 14.1 or the Arbitral Tribunal should determine differently, the written stage of the proceedings shall be as set out below.

15.2    Within 30 days of receipt of written notification from the Registrar of the formation of the Arbitral Tribunal, the Claimant shall send to the Registrar a Statement of Case setting out in sufficient detail the facts and any contentions of law on which it relies, together with the relief claimed against all other parties, save and insofar as such matters have not been set out in its Request.

15.3    Within 30 days of receipt of the Statement of Case or written notice from the Claimant that it elects to treat the Request as its Statement of Case, the Respondent shall send to the Registrar a Statement of Defence setting out in sufficient detail which of the facts and contentions of law in the Statement of Case or Request (as the case may be) it admits or denies, on what grounds and on what other facts and contentions of law it relies.  Any counterclaims shall be submitted with the Statement of Defence in the same manner as claims are to be set out in the Statement of Case.

15.4    Within 30 days of receipt of the Statement of Defence, the Claimant shall send to the Registrar a Statement of Reply which, where there are any counterclaims, shall include a Defence to Counterclaim in the same manner as a defence is to be set out in the Statement of Defence.

15.5    If the Statement of Reply contains a Defence to Counterclaim, within 30 days of its receipt the Respondent shall send to the Registrar a Statement of Reply to Counterclaim.

15.6    All Statements referred to in this Article shall be accompanied by copies (or, if they are especially voluminous, lists) of all essential documents on which the party concerned relies and which have not previously been submitted by any party, and (where appropriate) by any relevant samples and exhibits.

15.7    As soon as practicable following receipt of the Statements specified in this Article, the Arbitral Tribunal shall proceed in such manner as has been agreed in writing by the parties or pursuant to its authority under these Rules.

15.8    If the Respondent fails to submit a Statement of Defence or the Claimant a Statement of Defence to Counterclaim, or if at any point any party fails to avail itself of the opportunity to present its case in the manner determined by Article 15.2 to 15.6 or directed by the Arbitral Tribunal, the Arbitral Tribunal may nevertheless proceed with the arbitration and make an award.

**Article 16        Seat of Arbitration and Place of Hearings**

16.1    The parties may agree in writing the seat (or legal place) of their arbitration.  Failing such a choice, the seat of arbitration shall be London, unless and until the LCIA Court

Ex. I - Page 7

determines in view of all the circumstances, and after having given the parties an opportunity to make written comment, that another seat is more appropriate.

16.2    The Arbitral Tribunal may hold hearings, meetings and deliberations at any convenient geographical place in its discretion; and if elsewhere than the seat of the arbitration, the arbitration shall be treated as an arbitration conducted at the seat of the arbitration and any award as an award made at the seat of the arbitration for all purposes.

16.3    The law applicable to the arbitration (if any) shall be the arbitration law of the seat of arbitration, unless and to the extent that the parties have expressly agreed in writing on the application of another arbitration law and such agreement is not prohibited by the law of the arbitral seat.

## Article 17        Language of Arbitration

17.1    The initial language of the arbitration shall be the language of the Arbitration Agreement, unless the parties have agreed in writing otherwise and providing always that a non-participating or defaulting party shall have no cause for complaint if communications to and from the Registrar and the arbitration proceedings are conducted in English.

17.2    In the event that the Arbitration Agreement is written in more than one language, the LCIA Court may, unless the Arbitration Agreement provides that the arbitration proceedings shall be conducted in more than one language, decide which of those languages shall be the initial language of the arbitration.

17.3    Upon the formation of the Arbitral Tribunal and unless the parties have agreed upon the language or languages of the arbitration, the Arbitration Tribunal shall decide upon the language(s) of the arbitration, after giving the parties an opportunity to make written comment and taking into account the initial language of the arbitration and any other matter it may consider appropriate in all the circumstances of the case.

17.4    If any document is expressed in a language other than the language(s) of the arbitration and no translation of such document is submitted by the party relying upon the document, the Arbitral Tribunal or (if the Arbitral Tribunal has not been formed) the LCIA Court may order that party to submit a translation in a form to be determined by the Arbitral Tribunal or the LCIA Court, as the case may be.

## Article 18        Party Representation

18.1    Any party may be represented by legal practitioners or any other representatives.

18.2    At any time the Arbitral Tribunal may require from any party proof of authority granted to its representative(s) in such form as the Arbitral Tribunal may determine.

## Article 19        Hearings

19.1    Any party which expresses a desire to that effect has the right to be heard orally before the Arbitral Tribunal on the merits of the dispute, unless the parties have agreed in writing on documents-only arbitration.

19.2    The Arbitral Tribunal shall fix the date, time and physical place of any meetings and hearings in the arbitration, and shall give the parties reasonable notice thereof.

19.3    The Arbitral Tribunal may in advance of any hearing submit to the parties a list of questions which it wishes them to answer with special attention.

19.4    All meetings and hearings shall be in private unless the parties agree otherwise in writing or the Arbitral Tribunal directs otherwise.

19.5    The Arbitral Tribunal shall have the fullest authority to establish time-limits for meetings and hearings, or for any parts thereof.

**Article 20        Witnesses**

20.1    Before any hearing, the Arbitral Tribunal may require any party to give notice of the identity of each witness that party wishes to call (including rebuttal witnesses), as well as the subject matter of that witness's  testimony, its content and its relevance to the issues in the arbitration.

20.2     The Arbitral Tribunal may also determine the time, manner and form in which such materials should be exchanged between the parties and presented to the Arbitral Tribunal; and it has a discretion to allow, refuse, or limit the appearance of witnesses (whether witness of fact or expert witness).

20.3    Subject to any order otherwise by the Arbitral Tribunal, the testimony of a witness may be presented by a party in written form, either as a signed statement or as a sworn affidavit.

20.4    Subject to Article 14.1 and 14.2, any party may request that a witness, on whose testimony another party seeks to rely, should attend for oral questioning at a hearing before the Arbitral Tribunal.  If the Arbitral Tribunal orders that other party to produce the witness and the witness fails to attend the oral hearing without good cause, the Arbitral Tribunal may place such weight on the written testimony (or exclude the same altogether) as it considers appropriate in the circumstances of the case.

20.5    Any witness who gives oral evidence at a hearing before the Arbitral Tribunal may be questioned by each of the parties under the control of the Arbitral Tribunal.  The Arbitral Tribunal may put questions at any stage of his evidence.

20.6    Subject to the mandatory provisions of any applicable law, it shall not be improper for any party or its legal representatives to interview any witness or potential witness for the purpose of presenting his testimony in written form or producing him as an oral witness.

20.7    Any individual intending to testify to the Arbitral Tribunal on any issue of fact or expertise shall be treated as a witness under these Rules notwithstanding that the individual is a party to the arbitration or was or is an officer, employee or shareholder of any party.

**Article 21        Experts to the Arbitral Tribunal**

21.1    Unless otherwise agreed by the parties in writing, the Arbitral Tribunal:

(a)    may appoint one or more experts to report to the Arbitral Tribunal on specific issues, who shall be and remain  impartial and independent of the parties throughout the arbitration proceedings; and

(b)    may require a party to give any such expert any relevant information or to provide access to any relevant documents, goods, samples, property or site for inspection by the expert.

21.2    Unless otherwise agreed by the parties in writing, if a party so requests or if the Arbitral Tribunal considers it necessary, the expert shall, after delivery of his written or oral report to the Arbitral Tribunal and the parties, participate in one or more hearings at which the parties shall have the opportunity to question the expert on his report and to present expert witnesses in order to testify on the points at issue.

21.3    The fees and expenses of any expert appointed by the Arbitral Tribunal under this Article shall be paid out of the deposits payable by the parties under Article 24 and shall form part of the costs of the arbitration.

**Article 22        Additional Powers of the Arbitral Tribunal**

22.1    Unless the parties at any time agree otherwise in writing, the Arbitral Tribunal shall have the power, on the application of any party or of its own motion, but in either case only after giving the parties a reasonable opportunity to state their views:

(a)    to allow any party, upon such terms (as to costs and otherwise) as it shall determine, to amend any claim, counterclaim, defence and reply;

(b)    to extend or abbreviate any time-limit provided by the Arbitration Agreement or these Rules for  the conduct of the arbitration or by the Arbitral Tribunal's own orders;

(c)    to conduct such enquiries as may appear to the Arbitral Tribunal to be necessary or expedient, including whether and to what extent the Arbitral Tribunal should itself take the initiative in identifying the issues and ascertaining the relevant facts and the law(s) or rules of law applicable to the arbitration, the merits of the parties' dispute and the Arbitration Agreement;

(d)    to order any party to make any property, site or thing under its control and relating to the subject matter of the arbitration available for inspection by the Arbitral Tribunal, any other party, its expert or any expert to the Arbitral Tribunal;

(e)    to order any party to produce to the Arbitral Tribunal, and to the other parties for inspection, and to supply copies of, any documents or classes of documents in their possession, custody or power which the Arbitral Tribunal determines to be relevant;

(f)    to decide whether or not to apply any strict rules of evidence (or any other rules) as to the admissibility, relevance or weight of any material tendered by a party on any matter of fact or expert opinion; and to determine the time, manner and form in which such material should be exchanged between the parties and presented to the Arbitral Tribunal;

(g)    to order the correction of any contract between the parties or the Arbitration Agreement, but only to the extent required to rectify any mistake which the Arbitral Tribunal determines to be common to the parties and then only if and to the extent to which the law(s) or rules of law applicable to the contract or Arbitration Agreement permit such correction; and

(h)    to allow, only upon the application of a party, one or more third persons to be joined in the arbitration as a party provided any such third person and the applicant party have consented thereto in writing, and thereafter to make a single final award, or separate awards, in respect of all parties so implicated in the arbitration;

22.2    By agreeing to arbitration under these Rules, the parties shall be treated as having agreed not to apply to any state court or other judicial authority for any order available from the Arbitral Tribunal under Article 22.1, except with the agreement in writing of all parties.

22.3    The Arbitral Tribunal shall decide the parties' dispute in accordance with the law(s) or rules of law chosen by the parties as applicable to the merits of their dispute. If and to the extent that the Arbitral Tribunal determines that the parties have made no such choice, the Arbitral Tribunal shall apply the law(s) or rules of law which it considers appropriate.

22.4    The Arbitral Tribunal shall only apply to the merits of the dispute principles deriving from "ex aequo et bono", "amiable composition" or "honourable engagement" where the parties have so agreed expressly in writing.

**Article 23        Jurisdiction of the Arbitral Tribunal**

23.1    The Arbitral Tribunal shall have the power to rule on its own jurisdiction, including any objection to the initial or continuing existence, validity or effectiveness of the Arbitration Agreement.  For that purpose, an arbitration clause which forms or was intended to form part of another agreement shall be treated as an arbitration agreement independent of that other agreement.   A decision by the Arbitral Tribunal that such other agreement is non-existent, invalid or ineffective shall not entail ipso jure the non-existence, invalidity or ineffectiveness of the arbitration clause.

23.2    A plea by a Respondent that the Arbitral Tribunal does not have jurisdiction shall be

treated as having been irrevocably waived unless it is raised not later than the Statement of Defence; and a like plea by a Respondent to Counterclaim shall be similarly treated unless it is raised no later than the Statement of Defence to Counterclaim. A plea that the Arbitral Tribunal is exceeding the scope of its authority shall be raised promptly after the Arbitral Tribunal has indicated its intention to decide on the matter alleged by any party to be beyond the scope of its authority, failing which such plea shall also be treated as having been waived irrevocably.  In any case, the Arbitral Tribunal may nevertheless admit an untimely plea if it considers the delay justified in the particular circumstances.

23.3    The Arbitral Tribunal may determine the plea to its jurisdiction or authority in an award as to jurisdiction or later in an award on the merits, as it considers appropriate in the circumstances.

23.4    By agreeing to arbitration under these Rules, the parties shall be treated as having agreed not to apply to any state court or other judicial authority for any relief regarding the Arbitral Tribunal's jurisdiction or authority, except with the agreement in writing of all parties to the arbitration or the prior authorisation of the Arbitral Tribunal or following the latter's award ruling on the objection to its jurisdiction or authority.

## Article 24    Deposits

24.1    The LCIA Court may direct the parties, in such proportions as it thinks appropriate, to make one or several interim or final payments on account of the costs of the arbitration. Such deposits shall be made to and held by the LCIA and from time to time may be released by the LCIA Court to the arbitrator(s), any expert appointed by the Arbitral Tribunal and the LCIA itself as the arbitration progresses.

24.2    The Arbitral Tribunal shall not proceed with the arbitration without ascertaining at all times from the Registrar or any deputy Registrar that the LCIA is in requisite funds.

24.3    In the event that a party fails or refuses to provide any deposit as directed by the LCIA Court, the LCIA Court may direct the other party or parties to effect a substitute payment to allow the arbitration to proceed (subject to any award on costs).  In such circumstances, the party paying the substitute payment shall be entitled to recover that amount as a debt immediately due from the defaulting party.

24.4    Failure by a claimant or counterclaiming party to provide promptly and in full the required deposit may be treated by the LCIA Court and the Arbitral Tribunal as a withdrawal of the claim or counterclaim respectively.

## Article 25    Interim and Conservatory Measures

25.1    The Arbitral Tribunal shall have the power, unless otherwise agreed by the parties in writing, on the application of any party:

(a)    to order any respondent party to a claim or counterclaim to provide security for all or part of the amount in dispute, by way of deposit or bank guarantee or in any other manner and upon such terms as the Arbitral Tribunal considers appropriate. Such terms may include the provision by the claiming or counterclaiming party of a cross-indemnity, itself secured in such manner as the Arbitral Tribunal considers appropriate, for any costs or losses incurred by such respondent in providing security. The amount of any costs and losses payable under such cross-indemnity may be determined by the Arbitral Tribunal in one or more awards;

(b)    to order the preservation, storage, sale or other disposal of any property or thing under the control of any party and relating to the  subject matter of the arbitration; and

(c)    to order on a provisional basis, subject to final determination in an award, any relief which the Arbitral Tribunal would have power to grant in an award, including a provisional order for the payment of money or the disposition of property as between any parties.

11

25.2    The Arbitral Tribunal shall have the power, upon the application of a party, to order any claiming or counterclaiming party to provide security for the legal or other costs of any other party by way of deposit or bank guarantee or in any other manner and upon such terms as the Arbitral Tribunal considers appropriate. Such terms may include the provision by that other party of a cross-indemnity, itself secured in such manner as the Arbitral Tribunal considers appropriate, for any costs and losses incurred by such claimant or counterclaimant in providing security. The amount of any costs and losses payable under such cross-indemnity may be determined by the Arbitral Tribunal in one or more awards. In the event that a claiming or counterclaiming party does not comply with any order to provide security, the Arbitral Tribunal may stay that party's claims or counterclaims or dismiss them in an award.

25.3    The power of the Arbitral Tribunal under Article 25.1 shall not prejudice howsoever any party's right to apply to any state court or other judicial authority for interim or conservatory measures before the formation of the Arbitral Tribunal and, in exceptional cases, thereafter. Any application and any order for such measures after the formation of the Arbitral Tribunal shall be promptly communicated by the applicant to the Arbitral Tribunal and all other parties. However, by agreeing to arbitration under these Rules, the parties shall be taken to have agreed not to apply to any state court or other judicial authority for any order for security for its legal or other costs available from the Arbitral Tribunal under Article 25.2.

**Article 26        The Award**

26.1    The Arbitral Tribunal shall make its award in writing and, unless all parties agree in writing otherwise, shall state the reasons upon which its award is based.  The award shall also state the date when the award is made and the seat of the arbitration; and it shall be signed by the Arbitral Tribunal or those of its members assenting to it.

26.2    If any arbitrator fails to comply with the mandatory provisions of any applicable law relating to the making of the award, having been given a reasonable opportunity to do so, the remaining arbitrators may proceed in his absence and state in their award the circumstances of the other arbitrator's failure to participate in the making of the award.

26.3    Where there are three arbitrators and the Arbitral Tribunal fails to agree on any issue, the arbitrators shall decide that issue by a majority.  Failing a majority decision on any issue, the chairman of the Arbitral Tribunal shall decide that issue.

26.4    If any arbitrator refuses or fails to sign the award, the signatures of the majority or (failing a majority) of the chairman shall be sufficient, provided that the reason for the omitted signature is stated in the award by the majority or chairman.

26.5    The sole arbitrator or chairman shall be responsible for delivering the award to the LCIA Court, which shall transmit certified copies to the parties provided that the costs of arbitration have been paid to the LCIA in accordance with Article 28.

26.6    An award may be expressed in any currency. The Arbitral Tribunal may order that simple or compound interest shall be paid by any party on any sum awarded at such rates as the Arbitral Tribunal determines to be appropriate, without being bound by legal rates of interest imposed by any state court, in respect of any period which the Arbitral Tribunal determines to be appropriate ending not later than the date upon which the award is complied with.

26.7    The Arbitral Tribunal may make separate awards on different issues at different times. Such awards shall have the same status and effect as any other award made by the Arbitral Tribunal.

26.8    In the event of a settlement of the parties' dispute, the Arbitral Tribunal may render an award recording the settlement if the parties so request in writing (a "Consent Award"), provided always that such award contains an express statement that it is an  award made by the parties' consent.  A Consent Award need not contain reasons. If the parties do not require a consent award, then on written confirmation by the parties to the LCIA Court that a settlement has been reached, the Arbitral Tribunal shall be discharged and

12

the arbitration proceedings concluded, subject to payment by the parties of any outstanding costs of the arbitration under Article 28.

26.9    All awards shall be final and binding on the parties. By agreeing to arbitration under these Rules, the parties undertake to carry out any award immediately and without any delay (subject only to Article 27); and the parties also waive irrevocably their right to any form of appeal, review or recourse to any state court or other judicial authority, insofar as such waiver may be validly made.

**Article 27        Correction of Awards and Additional Awards**

27.1    Within 30 days of receipt of any award, or such lesser period as may be agreed in writing by the parties, a party may by written notice to the Registrar (copied to all other parties) request the Arbitral Tribunal to correct in the award any errors in computation, clerical or typographical errors or any errors of a similar nature.  If the Arbitral Tribunal considers the request to be justified, it shall make the corrections within 30 days of receipt of the request.  Any correction shall take the form of separate memorandum dated and signed by the Arbitral Tribunal or (if three arbitrators) those of its members assenting to it; and such memorandum shall become part of the award for all purposes.

27.2    The Arbitral Tribunal may likewise correct any error of the nature described in Article 27.1 on its own initiative within 30 days of the date of the award, to the same effect.

27.3    Within 30 days of receipt of the final award, a party may by written notice to the Registrar (copied to all other parties), request the Arbitral Tribunal to make an additional award as to claims or counterclaims presented in the arbitration but not determined in any award.  If the Arbitral Tribunal considers the request to be justified, it shall make the additional award within 60 days of receipt of the request. The provisions of Article 26 shall apply to any additional award.

**Article 28        Arbitration and Legal Costs**

28.1    The costs of the arbitration (other than the legal or other costs incurred by the parties themselves) shall be determined by the LCIA Court in accordance with the Schedule of Costs. The parties shall be jointly and severally liable to the Arbitral Tribunal and the LCIA for such arbitration costs.

28.2    The Arbitral Tribunal shall specify in the award the total amount of the costs of the arbitration as determined by the LCIA Court.  Unless the parties agree otherwise in writing, the Arbitral Tribunal shall determine the proportions in which the parties shall bear all or part of such arbitration costs.  If the Arbitral Tribunal has determined that all or any part of the arbitration costs shall be borne by a party other than a party which has already paid them to the LCIA, the latter party shall have the right to recover the appropriate amount from the former party.

28.3    The Arbitral Tribunal shall also have the power to order in its award that all or part of the legal or other costs incurred by a party be paid by another party, unless the parties agree otherwise in writing. The Arbitral Tribunal shall determine and fix the amount of each item comprising such costs on such reasonable basis as it thinks fit.

28.4     Unless the parties otherwise agree in writing, the Arbitral Tribunal shall make its orders on both arbitration and legal costs on the general principle that costs should reflect the parties' relative success and failure in the award or arbitration, except where it appears to the Arbitral Tribunal that in the particular circumstances this general approach is inappropriate.  Any order for costs shall be made with reasons in the award containing such order.

28.5    If the arbitration is abandoned, suspended or concluded, by agreement or otherwise, before the final award is made, the parties shall remain jointly and severally liable to pay to the LCIA and the Arbitral Tribunal the costs of the arbitration as determined by the LCIA Court in accordance with the Schedule of Costs.  In the event that such arbitration costs are less than the deposits made by the parties, there shall be a refund by the LCIA in such proportion as the parties may agree in writing, or failing such agreement, in the

13

same proportions as the deposits were made by the parties to the LCIA.

**Article 29        Decisions by the LCIA Court**

29.1    The decisions of the LCIA Court with respect to all matters relating to the arbitration shall be conclusive and binding upon the parties and the Arbitral Tribunal.  Such decisions are to be treated as administrative in nature and the LCIA Court shall not be required to give any reasons.

29.2    To the extent permitted by the law of the seat of the arbitration, the parties shall be taken to have waived any right of appeal or review in respect of any such decisions of the LCIA Court to any state court or other judicial authority.  If such appeals or review remain possible due to mandatory provisions of any applicable law, the LCIA Court shall, subject to the provisions of that applicable law, decide whether the arbitral proceedings are to continue, notwithstanding an appeal or review.

**Article 30        Confidentiality**

30.1    Unless the parties expressly agree in writing to the contrary, the parties undertake as a general principle to keep confidential all awards in their arbitration, together with all materials in the proceedings created for the purpose of the arbitration and all other documents produced by another party in the proceedings not otherwise in the public domain - save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right or to enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority.

30.2    The deliberations of the Arbitral Tribunal are likewise confidential to its members, save and to the extent that disclosure of an arbitrator's refusal to participate in the arbitration is required of the other members of the Arbitral Tribunal under Articles 10, 12 and 26.

30.3    The LCIA Court does not publish any award or any part of an award without the prior written consent of all parties and the Arbitral Tribunal.

**Article 31        Exclusion of Liability**

31.1     None of the LCIA, the LCIA Court (including its President, Vice-Presidents and individual members), the Registrar, any deputy Registrar, any arbitrator and any expert to the Arbitral Tribunal shall be liable to any party howsoever for any act or omission in connection with any arbitration conducted by reference to these Rules, save where the act or omission is shown by that party to constitute conscious and deliberate wrongdoing committed by the body or person alleged to be liable to that party.

31.2    After the award has been made and the possibilities of correction and additional awards referred to in Article 27 have lapsed or been exhausted, neither the LCIA, the LCIA Court (including its President, Vice-Presidents and individual members), the Registrar, any deputy Registrar, any arbitrator or expert to the Arbitral Tribunal shall be under any legal obligation to make any statement to any person about any matter concerning the arbitration, nor shall any party seek to make any of these persons a witness in any legal or other proceedings arising out of the arbitration.

**Article 32        General Rules**

32.1    A party who knows that any provision of the Arbitration Agreement (including these Rules) has not been complied with and yet proceeds with the arbitration without promptly stating its objection to such non-compliance, shall be treated as having irrevocably waived its right to object.

32.2    In all matters not expressly provided for in these Rules, the LCIA Court, the Arbitral Tribunal and the parties shall act in the spirit of these Rules and shall make every reasonable effort to ensure that an award is legally enforceable.

14