UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DORALEH CONTAINER TERMINAL SA,**<br><br>Petitioner,<br><br>v.<br><br>**REPUBLIC OF DJIBOUTI,**<br><br>Respondent. | Civil Action No. 20-02571 (TFH) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Petitioner Doraleh Container Terminal SA ("DCT") brings this action against Respondent the Republic of Djibouti ("Djibouti") seeking confirmation of two arbitration awards issued in 2019 by the London Court of International Arbitration ("LCIA") in favor of DCT. DCT seeks to confirm the awards under the Federal Arbitration Act, 9 U.S.C. § 201, *et seq.*, which codifies the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").

Djibouti opposes confirmation of the awards, arguing that this Court lacks subject matter jurisdiction over the Petition and that confirmation must be denied pursuant to the New York Convention.

On January 26, 2023, this Court heard the parties' arguments on the Petition and issued a bench ruling confirming the arbitration awards. Consistent with that ruling, this Memorandum Opinion provides further explanation for this Court's decision.

## II. BACKGROUND

### A. Factual Background

DCT is a joint venture between Djibouti's port authority, Port de Djibouti SA ("PDSA"), and DP World Djibouti ("DP World"). Pet. to Confirm Foreign Arbitration Award ¶ 1 [ECF No. 1]. Upon the venture's formation, DP World held a minority 33.34% share interest in DCT, but had the right to appoint a majority of the members of DCT's board of directors and exercised control over the entity. *Id.* DCT was incorporated by a statute passed by Djibouti's Parliament. *Id.* ¶ 11. Djibouti is a foreign state within the meaning of 28 U.S.C. § 1330. *Id.* ¶ 3.

In October 2006, Djibouti and DCT entered into a Concession Agreement to build and develop a new international container terminal on the Red Sea in Doraleh, Djibouti. *Id.* ¶ 12. In exchange for building the terminal, the Agreement granted DCT the exclusive right to handle container shipping in Djibouti, and required Djibouti to pay royalties for any ships that did not dock at the terminal. *Id.* ¶ 12. Article 20 of the Agreement provides for arbitration of any dispute between the parties under LCIA Rules if it cannot be amicably settled. *Id.* ¶ 13. The Concession Agreement was ratified by Djiboutian Parliament on December 18, 2006. *Id.* ¶ 12. DCT completed the terminal on schedule in accordance with the agreement in December 2008. *Id.* ¶ 14. Pursuant to the Agreement, DP World managed the day-to-day operations of the terminal. *Id.*

In 2014, Djibouti commenced the London Arbitration, LCIA No. 142732, against DCT, DP World, and Dubai International, claiming, among other things, that the Concession Agreement should be rescinded because it had been procured through bribery and corruption. *Id.* ¶ 15. DCT and DP World brought counterclaims against Djibouti for failure to pay certain royalties and for breach of their exclusivity rights under the Concession Agreement. *Id.* ¶ 17.

The arbitration hearing was conducted under LCIA rules before a tribunal of arbitrators in the Fall of 2016. *Id.* ¶ 16. On February 20, 2017, the tribunal issued the first of four awards, dismissing the claims brought by Djibouti to invalidate the Concession Agreement in their entirety, and finding that Djibouti was obligated to pay costs and legal fees. The tribunal issued the Second Partial Final Award on June 29, 2017, awarding DCT costs and fees totaling £7 Million. *Id.* This award has been paid. *Id.*

The First and Second Awards did not address DCT's two counterclaims, which were stayed at the end of the 2016 hearing to allow for commercial settlement discussions between the parties. *Id.* ¶ 17. The counterclaims were instead addressed in the Third and Fourth Awards, which are the awards at issue in this litigation. *Id.* During 2017 and into 2018, the parties unsuccessfully attempted to resolve the counterclaims. *Id.* ¶ 18.

Prior to the eventual arbitration hearing, in 2017, Djibouti enacted a law permitting the Djiboutian government to demand re-negotiation of "strategic infrastructure contracts" and unilaterally terminate them should such negotiation fail. *Id.* ¶ 19. In December 2017, the Djiboutian government invoked this law to re-negotiate the Concession Agreement, but DCT and DP World refused to engage. *Id.* In response to Djibouti's demands, in February 2018, DCT issued a notice of dispute to Djibouti, and commenced a second and separate arbitration proceeding to confirm the Concession Agreement. *Id.* ¶ 19.

Two days after DCT brought the second arbitration, "in apparent retaliation," the President of Djibouti issued an executive order claiming to terminate the Concession Agreement, and Djibouti took physical control of the container terminal. *Id.* ¶ 20. Despite Djibouti's law and executive decrees purporting to terminate the Concession Agreement, the tribunal in the second arbitration found that it "remains valid and binding." *Id.*

3

In September 2018, Djibouti applied to the Djibouti Court of First Instance in an *ex parte* proceeding seeking the appointment of an administrator over DCT due to "tensions" between the shareholders, DP World, and PDSA, a division of the Djiboutian government. *Id.* ¶ 21. The Djiboutian court appointed Chantal Tadoral as the provisional administrator of DCT. *Id.*

On November 9, 2018, the original London tribunal held an arbitration hearing on DCT's counterclaims. *Id.* ¶ 23. Though Djibouti had initiated the proceedings in 2016, it did not appear. *Id.* Instead, on November 18, 2018, Ms. Tadoral, claiming to represent DCT, applied to stay the arbitration. *Id.* ¶ 21. On January 3, 2019, the tribunal rejected the application for a stay because it had already proceeded to the hearing stage without any challenges from the counterclaimants. *Id.* ¶ 22.

On May 3, 2019, the arbitration tribunal issued its Third Partial Final Award, granting declarations that Djibouti breached the Concession Agreement and awarding total damages and legal costs to DCT in the amount of $474,388,673, not including interest. *Id.* ¶ 23. On July 1, 2019, the tribunal issued the Fourth Partial Final Award awarding interest on the unpaid royalties and legal fees to DCT. *Id.* ¶ 24. Total damages amount to $485,755,717.80, excluding interest on the exclusivity claims and the royalty claims since April 11, 2019. *Id.*

### B. Procedural History

On September 14, 2020, DCT filed in this Court a Petition to Confirm Arbitration Awards against the Republic of Djibouti. *See generally* Pet. After a lengthy dispute over service of process, Djibouti entered a stipulation in which it agreed to respond to the Petition by November 22, 2021. Stipulation [ECF No. 25]. On November 22, 2021, Djibouti filed its Answer, generally denying the allegations in the Petition, and asserting seven affirmative defenses. Answer [ECF No. 28]. After DCT objected to various discovery requests from

Djibouti, on January 24, 2022, DCT filed a notice letter advising the Court that Djibouti's Answer was "an improper response to the Petition" under the Federal Arbitration Act ("FAA"), its discovery requests were "premature and improper," and that the Petition was ripe for resolution on the merits. Notice Letter [ECF No. 30-1]. On February 3, 2022, Djibouti filed a Motion to Compel Discovery and Response to Petitioner's Notice Letter. Mot. to Compel [ECF No. 31]. The Court held a motion hearing on November 14, 2022, denied the Motion to Compel, and ordered the parties to submit a stipulated briefing schedule to resolve the Petition on the merits. Minute Entry (Nov. 14, 2022). On January 3, 2023, Djibouti submitted its Response in Opposition to DCT's Petition. Resp., ECF No. 37. On January 24, 2023, DCT submitted its Reply in Support of the Petition. Reply, ECF No. 39.

This Court heard arguments on the Petition on January 26, 2023, and confirmed the arbitration awards. This opinion sets forth the Court's reasoning for that decision, consistent with the findings it made during the hearing.

**III. ANALYSIS**

Djibouti argues that this Court should deny the Petition for two reasons: first, that this Court lacks subject matter jurisdiction to hear the Petition under the Federal Arbitration Act; and second, that two grounds for denying confirmation of the award under the New York Convention apply.

**A. Subject Matter Jurisdiction**

Under D.C. Circuit precedent, "[w]here jurisdiction is sought over a foreign sovereign for the enforcement of an arbitral award…two conditions must be satisfied: 'First, there must be a basis upon which a court in the United States may enforce a foreign arbitral award; and second, [the foreign sovereign] must not enjoy sovereign immunity from such an enforcement action.'"

*Diag Human, S.E v. Czech Republic-Ministry of Health*, 824 F.3d 131, 134 (D.C. Cir. 2016) (quoting *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999)).

Consistent with the Circuit's decision, this Court will review those conditions in reverse order. *See id.; see also Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 31-32 (D.D.C. 2016) (addressing sovereign immunity before the court's basis to enforce the award). Both are satisfied here, and this Court has subject matter jurisdiction over the Petition.

### 1. Sovereign Immunity

First, Djibouti has waived sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in the courts of the United States." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 101 (D.C. Cir. 2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Under the statute, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction…" *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). And because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions…[a]t the threshold of every action in a District Court against a foreign state…the court must satisfy itself that one of the exceptions applies…" *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983); *see also Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 187 (D.D.C. 2016).

This Court is so satisfied here. Section 1605(a)(1) of the FSIA states that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which the foreign state has waived its immunity ... by implication." 28 U.S.C. § 1605(a)(1). The D.C. Circuit has found that an implied waiver of sovereign immunity occurs when "a foreign state has filed a responsive pleading in an action without raising the defense of sovereign

immunity" so long as it "exhibit[s] a conscious decision to take part in the litigation." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990). Djibouti does not contest this Court's jurisdiction on sovereign immunity grounds, and has filed numerous substantive pleadings, including its answer to the Petition, a discovery motion, and its response. *See* Answer; Mot. to Compel; Resp. Its clear, "conscious decision to participate in the litigation" is more than enough to demonstrate an implied waiver of its sovereign immunity. *Foremost-McKesson*, 905 F.2d at 444; *see also Stati,* 199 F. Supp. 3d at 189 (finding respondent waived its sovereign immunity when it "filed two substantive responsive pleadings" without raising such a defense).

2. <u>Basis to Enforce the Awards</u>

Second, the Court has the jurisdiction to enforce the awards under the FAA. The New York Convention, as codified by the FAA, 9 U.S.C. § 201, *et seq.*, is a multilateral treaty that applies to "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Art. I(1), 21 U.S.T. 2517 (1970). The FAA declares that

> [a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203; *see also Czech Republic-Ministry of Health*, 824 F.3d at 137 ("We have already established that the New York Convention, as codified by the United States, grants federal courts jurisdiction over arbitration disputes that fall within its ambit.").

The parties here do not dispute that the arbitral awards fall under the jurisdictional ambit granted by § 203. Djibouti instead argues that the Court lacks subject matter jurisdiction because 9 U.S.C. § 207 allows a court to "confirm a foreign arbitration award only if the petition is made

by a 'party to the arbitration' to a 'court having jurisdiction.'" Resp. at 9 (quoting 9 U.S.C. § 207). Underlying this argument is Djibouti's contention that the DCT lacks the authority to bring suit because its purported provisional administrator did not approve the Petition. *Id.* at 11-12. Djibouti claims that this lack of authority means that DCT was not a "party to the arbitration" and thus the Court's subject matter jurisdiction does not extend to this suit. *Id.* Djibouti also argues that for similar reasons, DCT lacks standing. *Id.* at 9-10.

However, this argument lacks merit for at least three reasons: (1) no other court has dismissed a claim for a lack of subject matter jurisdiction under 9 U.S.C. § 207; (2) even if § 207 is a jurisdictional barrier, DCT meets the statutory requirements to bring suit and has standing; and (3) Djibouti's authority argument has no bearing on the Court's subject matter jurisdiction.

First, it is not clear that § 207 is a barrier against the Court's exercise of subject matter jurisdiction. 9 U.S.C. § 207 states, in its entirety:

> [w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

Djibouti does not provide, nor could the Court find, any cases where a court dismissed a petition for a lack of subject matter jurisdiction pursuant to 9 U.S.C. § 207.[1] Rather, courts have read § 207 primarily as requiring a court to enforce a foreign arbitral award unless it finds one of the specific grounds for denying enforcement under the New York Convention. *See, e.g., Tatneft v. Ukraine,* 21 F.4th 829, 835 (D.C. Cir. 2021), cert. denied sub nom. *Ukraine v. PAO Tatneft*,

---

[1] Nor could Djibouti point to any cases where a court dismissed a confirmation petition under the broader contention that the party did not have the authority to bring suit.

8

143 S. Ct. 290 (2022) (citing 9 U.S.C. § 207 for the prospect that the "New York Convention in general requires American courts to enforce international arbitral awards."); *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 64 (D.D.C. 2013) ("Pursuant to the Convention, a district court 'shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'") (quoting 9 U.S.C. § 207). While § 207 certainly provides the basis by which a court can dismiss a Petition, this Court sees nothing to suggest that doing so would be on jurisdictional grounds.

Second, even accepting § 207 as a limitation on the Court's exercise of jurisdiction, DCT's claim still falls within the New York Convention's basis for enforcing an arbitral award. DCT is named on the record in both the London Arbitration and this suit. In both proceedings, DCT is represented by Quinn Emanuel. *See* LCIA Third Partial Award, Pet. Ex. A at 5n. 1 ("Quinn Emanuel Urquhart & Sullivan LLP ("QE") acted then [at the outset of the arbitration] and now for the respondents.") And as noted in DCT's briefing, "the same board that authorized the arbitration authorized this ancillary proceeding seeking to enforce the Awards…" Reply at 14. Under any reasonable reading of the statute, DCT was a party to the underlying arbitration, and is therefore able to bring suit under § 207.

Djibouti's related argument that DCT lacks standing to bring the case fails for similar reasons. The Restatement (Third) on the U.S. Law of International Commercial Arbitration states that a "person that participates in an arbitral proceeding as a party without objection by any other party has standing to bring a post-award action" Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.28 PFD (2019). Not only did DCT participate in the arbitration as described above, but Djibouti had the opportunity to object to its status as a party in that arbitration and failed to do

9

so.[2] Accordingly, the New York Convention provides this Court with a basis to enforce the awards. Along with Djibouti's waiver of sovereign immunity, this is sufficient for the Court to find that it has the subject matter jurisdiction to enforce the awards.

Third and finally, Djibouti's authority argument has no bearing on the Court's subject matter jurisdiction. It strikes the Court as a disguised attempt to challenge the award on grounds that could have been brought before the arbitrator, rather than an authentic challenge to the Court's subject matter jurisdiction. Despite an invitation from the arbitral tribunal to comment on DCT's authority, Djibouti declined to respond, and instead raises its argument here for the first time. *See* Reply, Sinclair Decl. ¶¶ 29-34. But it is not this Court's job to engage with questions that could have been addressed before the arbitrator. The scope of a court's review of an arbitral award is "extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006). And as other courts have held, "[i]f a party fails to raise an issue…to the arbitrators, that issue is forfeited." *Chem. Overseas Holdings, Inc. v. Republica Oriental Del Uruguay*, 371 F. Supp. 2d 400, 401 (S.D.N.Y. 2005) (cleaned up), quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir.1998); *see also Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir.1993) ("Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration which is to provide a fast and inexpensive method for the resolution of…disputes.") (internal quotations and citations omitted). If Djibouti wanted to dispute DCT's

---

[2]   Chantal Tadoral, the purported provisional administrator of DCT and a non-party to the arbitration, did write to the tribunal and ask for a stay of the proceedings for Djiboutian courts to resolve any authority issue, but Djibouti did not. *See* Resp. Decl. (Second) of Chantal Tadoral. Djibouti, as discussed below, had notice of the arbitration and the opportunity to participate but failed to do so. "Any lost opportunity to be heard therefore was self-inflicted." *Belize Bank Ltd.*, 191 F. Supp. 3d at 39.

authority to bring a claim, it needed to do so before the arbitrator, not as a challenge to this Court's subject matter jurisdiction.

Further, after finding that it has subject matter jurisdiction to hear the Petition, this Court cannot consider Djibouti's authority argument as an independent ground upon which to dismiss the Petition. A party's lack of authority to bring a claim is not one of the explicit grounds upon which a Court can deny an arbitral award under the New York Convention.[3] *See* 9 U.S.C.§ 207; *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (a district court "may refuse to enforce the award only on the grounds explicitly set forth under Article V of the convention."). DCT's authority to bring suit has no bearing on the Court's decision to confirm the awards, whether on jurisdictional grounds or otherwise.

Accordingly, the Court concludes that it has subject matter jurisdiction over DCT's Petition.

### B. Djibouti's Defenses under the New York Convention

This Court turns next to Djibouti's arguments for denying the awards under the New York Convention. A district court "may refuse to enforce the award only on the grounds explicitly set forth under Article V of the convention." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us*, 126

---

[3]   "Pursuant to the New York Convention: (1) an arbitral award may be refused at the request of the party against whom it is invoked where (a) the parties to the agreement were under some incapacity; (b) the party against whom the award is invoked did not receive proper notice of the arbitration proceedings; (c) the award deals with an issue not falling within the terms of the parties' submission to arbitration; (d) the composition of the arbitral tribunal was not in accordance with the parties' agreement; (e) the award has not yet become binding; or (2) recognition and enforcement of an arbitral award may be refused in the country where it is sought if (a) the issue arbitrated is not capable of being arbitrated under the law or (b) it would be contrary to the public policy of such country". *Pao Tatneft v. Ukraine*, No. CV 17-582 (CKK), 2020 WL 4933621, at *4 (D.D.C. Aug. 24, 2020) (citing New York Convention, Art. V).

F.3d 15, 20 (2d Cir. 1997) (stating that "there is now considerable caselaw holding that, in an action to confirm an arbitration award…the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award"). "Given that the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011). "The burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation and the showing required to avoid summary confirmation is high." *Belize Bank Ltd.*, 191 F. Supp. 3d at 35 (internal citations and quotation marks omitted).

Djibouti advances two grounds for rejecting the awards under Article V of the New York Convention: (1) it received inadequate notice of the resumption of the arbitration proceedings; and (2) confirming the award would violate United States public policy. Resp. at 18. This Court addresses both below.

1. Article V(1)(b)—Improper Notice

This Court rejects Djibouti's argument that the Petition should be denied under the New York Convention for inadequate notice. Under Article V(1)(b), a court can refuse to enforce an award if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." art. V(1)(b); *see also Belize Bank Ltd.*, F. Supp. 2d at 38. That provision "essentially sanctions the application of the forum state's standards of due process." *Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 204 (D.D.C. 2018) (quoting *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145–46 (2d Cir. 1992)). Under United States law, "due process

12

requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016); *see also Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 205–06 (D.D.C. 2018) (applying this standard to a confirmation proceeding under the New York Convention). Further, actual notice "more than satisfie[s] due process rights." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

Djibouti argues that the Petition should be denied because "the tribunal violated those due process standards when it lifted the stay of its proceedings on the counterclaims against the Republic without notifying the Republic of those resumed proceedings." Resp. at 18. But the record before this Court demonstrates that Djibouti had actual notice of the proceedings, and declined to participate in the arbitration when given the opportunity.

On November 9, 2018, the Tribunal held a hearing on DCT's counterclaims without Djibouti's participation. Pet. Ex. A. ¶¶ 16-17, ECF 1-2.  Five days later, however, Djibouti's lawyer, Cabinet Ghaleb, copied the arbitral panel on an email to Chantal Tadoral, inviting her to ask the panel to stay the proceedings to resolve the authority issue. *See* Reply, Ex. 7. As DCT points out in its Reply, "[g]iven the confidential nature of the arbitration, it is simply impossible for Cabinet Ghaleb to have known about the hearing and case status…if the Republic did not have ***actual notice*** of the arbitration proceeding." Reply at 21 (emphasis in original). Other courts have similarly found that contacting the tribunal evidences adequate notice under the New York Convention. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 653 (S.D.N.Y. 2018) (finding that a party's request for an extension of time and response to a letter in the proceedings was "evidence that [the party] was provided proper notice of the arbitration"); *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, 2022 WL 4485277, at *8

(S.D.N.Y. Sept. 26, 2022) ("the fact that [the respondent contacted [the arbitration tribunal] to request additional copies of the arbitration documents…suggests that he was aware of the proceeding."). Djibouti's actual notice of the proceedings "more than satisfied [its] due process rights." *United Student Aid Funds, Inc.*, 559 U.S. at 272.

Further, the Tribunal clearly gave Djibouti "the opportunity to be heard" as required under the due process standard. After November 14, 2018 Mr. Ghaleb was copied on numerous communications between the parties and the tribunal, but beyond acknowledging receipt, he and his client chose to remain silent. *See* Reply, Ex. 1, Sinclair Decl. ¶¶ 29-34. The Panel even asked Djibouti through its counsel to comment on the authority issue, but it still declined to respond. *Id.* "Any lost opportunity to be heard therefore was self-inflicted." *Belize Bank Ltd*, 191 F. Supp. 3d at 39. Therefore, Article V(1)(b) does not offer a ground to deny the Petition.

### 2. Article V(2)(b)—Contrary to U.S. Public Policy

Djibouti's argument that enforcing the award would violate U.S. public policy also fails. Article V(2)(b) permits a court to deny confirmation of an award when "recognition and enforcement of the award would be contrary to the public policy of the [forum] country." New York Convention art. V(2)(b). Under this Circuit's precedent, "[t]he public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice*." TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004)).

Relying on Article V(2)(b), Djibouti contends that enforcing the award would "interfere with the Public's ability to control the Port—its sovereign territory." Resp. at 21. Its sole support for this contention is *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum*

*& Nat. Gas,* which held only that the "enforcement of the ***specific performance portion*** of the arbitral award would violate United States public policy. 314 F. Supp. 3d 95, 114 (D.D.C. 2018) (emphasis added). There is no specific performance element to the award here, and no subsequent threat to Djibouti's sovereignty. A purely compensatory award does not violate United States public policy. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 121 (D.D.C. 2017) (holding that "enforcing this award does not risk violating public policy" because "the award…only requires Venezuela to compensate Crystallex"). The monetary damages here compensate DCT for Djibouti's breach of a contract, and do not threaten sovereignty or otherwise violate U.S. public policy. Therefore, Article V(2)(b) does not provide a ground to deny the Petition.

## IV.   CONCLUSION

For the foregoing reasons, as well as the reasons stated on the record during the January 26, 2023 hearing, the Court granted DCT's Petition to Confirm Arbitration Awards. An appropriate Order accompanies this Memorandum Opinion.

February 15, 2023

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE